# CASES DETERMINED

### IN THE

# SUPREME COURT OF APPEALS

## OF WEST VIRGINIA.

AT A SPECIAL TERM THEREOF HELD AT WHEELING IN
THE COUNTY OF OHIO, COMMENCING ON THE
SEVENTH DAY OF MARCH, 1879, AND
ENDING ON THE TENTH DAY
OF MAY, 1879.

---

## WEST VA. O. & O. L. Co. *v.* VINAL.

### AND

## VINAL *v.* WEST VA. O. & O. L. Co.

#### Decided April 12, 1879.

(Absent, JOHNSON, JUDGE.)

1. Generally a cross-bill *ex vi terminorum* implies a bill brought by a defendant in a suit against the plaintiff in the same suit, or against other defendants in the same suit, or against both, touching matters in question in the original bill. It is generally proper when the cross-bill is filed against co-defendants to make the plaintiff in the original suit a defendant in the cross-bill.

14 637
37 178

14 637
39 172

14 637
47 245

14 637
49 11
49 524

14 637
56 415
56 661   1878
Special Term.

14 637
60 394

14 637
61 152
61 545

14 637
f62 41
63 23

14 637
f64 17

14 637
66 252

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

2. A cross-bill is usually brought, either to obtain a necessary discovery of facts in aid of the defense to the original bill, or to obtain full relief to all parties touching the matters of the original bill.

3. A cross-bill being generally considered as a defense to the original bill, or as a proceeding necessary to a complete determination of a matter already in litigation, the complainant is not, at least as against the complainant in the original bill, obliged to show any ground in equity to support the jurisdiction of the court. It is treated in short as a mere auxiliary suit or dependency upon the original. But when a cross-bill seeks not only discovery but also relief, care should be taken that the relief prayed by the cross-bill should be equitable relief; for to this extent it may be considered a cross-bill seeking further aid from the court; and then the relief ought to be such as in point of jurisdiction it is competent for the court to give.

4. Where a cross-bill seeks relief which is of an equitable nature, if it does not contain all proper allegations which confer an equitable title to such relief, it will be open to demurrer.

5. The W. Va. O. & O. L. Co. filed their bill of injunction against J. F. V., alleging therein that J. F. V. is wrongfully and unlawfully trespsasing upon certain land of the plaintiff, and asking the court to perpetually enjoin the defendant from committing further acts of trespass on said land, and the allegations touching the alleged trespasses and damage are sufficient to give a court of equity jurisdiction in the matter of the injunction. The defendant filed his answer, setting up as a defense to the bill of injunction a parol contract between the defendant and the plaintiff for the lease of a part of said land to him for a term of years, and a parol contract between the plaintiff and defendant and C. for a lease of the residue of the land for a term of years, and part performance of each of said contracts. And the defendant with leave of the court filed his cross-bill, setting up said verbal contracts with him as to said part of said land, and alleging part performance of the contract and that upon faith thereof he entered into the possession of the last named land, and expended a large amount of money thereon &c.; and also alleging the said verbal contract between the plaintiff and defendant, and said C. jointly, and part performance of the same by him and said C., and praying the specific performance of the verbal contract between the plaintiff in the original suit and himself, and also praying the specific execution of the contract between the plaintiff in the original suit, and himself and said C., and making C. a. party to the cross-bill who was not a party to the original bill The plaintiff in the original suit demurred to the cross-bill,

and the court below sustained the demurrer to so much of the same as prayed specific execution of the said parol contract between the demurrant and plaintiff in the cross-bill, and C., and in so far as the cross-bill made C. a party, and overruled the demurrer as to the residue of the bill. HELD:

1879
Special Term.

W. Va. O. & O·
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

That under the circumstances stated, in the opinion of the Court this was not error.

6. After the said cross-bill was filed, and before the said demurrer thereto was acted on by the court, the plaintiff in the cross-bill filed a supplemental cross-bill in the cause, alleging therein that plaintiff in the original suit and G. were committing trespasses on the land for which he and C. jointly contracted with the plaintiff in the original suit, and prayed for and obtained an injunction enjoining it and G. from further trespassing on said last named land, and made the plaintiff in the original suit and said G. and said C. parties defendant thereto. The plaintiff in the original suit and G. demurred to said supplemental cross-bill, and the court sustained the demurrer thereto in part and overruled it as to the residue. HELD:

That this was error in the court below, and for reasons stated in the opinion of this Court the court below should have sustained the demurrer to said supplemental cross-bill, and dissolved the injunction granted therein, and dismissed the same without prejudice, &c.

7. Every bill filed in a court of equity for the specific execution of a contract in relation to lands, calls for the exercise of the extraordinary jurisdiction of equity, and is an application to the sound discretion of the court. It is not a case requiring the interposition of the court *ex debito justitiæ* but rests in the discretion of the court upon all the circumstances. But the discretion which may be exercised in this class of cases is not an arbitrary or capricious one, depending upon the mere pleasure of the court, but one which is controlled by the established doctrines and settled principles of equity.

8. Generally when a contract respecting real property is in its nature and circumstances unobjectionable, it is as much a matter of course for courts of equity to decree specific performance of it, as it is for a court of law to give damages for a breach of it. But the court of equity may under certain circumstances refuse its aid and leave the parties to their legal remedies, or it may rescind the contract and place the parties *in statu quo* by making compensation, &c.

9. In the exercise of the equity branch of jurisprudence respecting the rescission and specific performance of contracts the court is governed by that sound and reasonable discretion, which

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

governs itself, as far as it may, by general rules and principles, but which at the same time withholds or grants relief according to the circumstances of each particular case, when these rules and principles will not furnish any exact measure of justice between the parties.

10. It is the advantage of a court of equity that it can modify the demands of parties according to justice; and it may refuse its decree, unless the party will take a decree upon condition of doing or relinquishing certain things.

11. When equity can do complete justice between the parties, it will never turn them out of court to pursue their remedy at law; but a court of equity having complete jurisdiction of the the parties and the subject matter, should make such decree as will settle the rights of the parties, do complete justice between them and close the controversy.

12. When a party files a bill setting up a parol contract for the sale of real estate or the lease thereof for more than one year, and prays the specific execution thereof upon the ground of part performance, &c., and the defendant in his answer denies the making of the contract as alleged, but admits that he did make a parol contract touching the realty in question, or part thereof, materially different from that set up in the bill; and from the whole evidence in the cause the court sees and is satisfied in its conscience, that a contract is proved clear and certain in its terms, but in some material respects variant and different from that stated in the bill or answer, the court may, in the interest of justice with the consent of the plaintiff in the exercise of a sound discretion, decree the specific execution of the contract as proved by the evidence or the strong preponderance of the evidence, and especially [so, if the court sees and is satisfied from the whole proceedings in the cause, that injustice will not thereby be done to the defendant by surprise, and provided the plaintiff consents in such case to the specific execution of the contract as the court ascertains it to be proved from the whole evidence, and performs such acts as the court may require or direct. And if the plaintiff in such case does not elect to have the specific execution of the contract as ascertained by the court, then the court may rescind the contract and proceed to make decrees, &c., to put the parties *in statu quo* according to the principles and rules of equity in such case. But no positive rule can be laid down by which the action of the court can be determined in all cases. The action of the court must to a great extent depend upon the circumstances and surroundings appearing in each case.

13. In the case of parol contracts for land partly executed, it is generally the duty of the court to exert proper means to ascertain the terms of the contract, whenever it clearly appears,

that a contract did exist, upon the faith of which one of the parties has expended his money, &c.; and this in order to prevent a failure of justice.

14. When the cross-bill not only sets up matters of defense to the original bill, but prays the specific performance of a parole contract set up as a defense to the original bill in relation to realty, so far as it prays for affirmative relief upon said contract it may be termed a cross-bill for relief in the nature of an original bill; and it is competent for the court to dismiss the original bill, and afterwards treat and proceed with the cross-bill in such case as an original bill for relief.

1879
Special Term.
————
W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

Appeal from and *supersedeas* to a decree of the circuit court of Ritchie county, rendered on the 20th day of October, 1875, in a cause in said court then pending, in which the West Virginia Oil and Oil Land Company was plaintiff, and John F. Vinal was defendant, and said Vinal was plaintiff in a cross-bill, and same company, &c., were defendants, allowed on the petition of said West Virginia Oil and Oil Land Company.

Hon. James M. Jackson, judge of the fifth judicial circuit, rendered the decree appealed from.

The facts fully appear in the opinion ot the Court :

*William S. Sands,* for appellant, cited the following authorities :

3 Dan. Ch. Pr. 1647, 1649, 1652; 2 Rob. (old) Pr. 318; 7 Johns, Ch. 252; 4 Johns. Ch. 357; 19 N. Y. 529; 17 How. 145; 12 Leigh 69; 3 Rand. 238; 21 Gratt. 23; 3 W. Va. 23; Ang. & Ames Corp. §§297, 305; 7 Gratt. 352 and cases cited; 5 N. Y. 320; 17 N. H. 18; 7 Wend. 31; 2 Pa. St. 318; Fry Sp, Perf. 71 and cases cited; 4 Johns. 487; 4 Paige 305; 1 Leigh 36; Fry Sp. Perf. 251–255 and cases cited; 14 Ves. 387; 6 Rand. 607; 1 Rand. 165; 1 Johns. Ch. 131; 2 Rob. (old) Pr. 172, 173; 1 H. & M. 91; 3 Rand. 238; 12 Leigh 69; 3 W. Va. 23; 21 Gratt. 24; 3 Edw. Ch. 445; 3 Wend. 637; 6 Munf. 406; 1 Wheat. 179; 14 Vern. 208; 1 Wall. 1; 7 Johns. Ch. 252; 1 Hoffm. Ch. Pr. 245; 2 Dan. Ch. 1647.

John A. *Hutchinson and Scott & Cole*, for appellee, relied on the following authorities:

Fry Sp. Perf. §204; 6 Beav. 605; 5 De G. M. & G. 757; 3 Rand. 261; 1 Ves. Jr. 221; 6 Ves. 467; 1 Madd. 300; Fry Sp. Perf. §§417, 418, 419; 2 Ves. Jr. 243; 6 Ves. 467; 6 Harr. & J. 288; 5 Myl. & Cr. 175; 18 Ves. 328; 21 Gratt. 23; 8 Wall. 557; 1 Cr. & Ph. 57; 3 Atk. 388; 6 Ves. 328; 3 Story 800; 3 Parsons Cont. 395 and note g; 5 Barb. 364; 2 Selden 279; 2 Am. Lead. Cas. 774, 777; 1 Lead. Cas. Eq. 743, Am. note; 10 Hare 122; 1 De G. M. & G. 755; 9 Wall. 254; Big. on Estop. 578; 9 Cush. 31; Law and Eq. Rep. Jan. 17, 1877, p. 91; 7 W. Va. 152; 2 Dan. Prac. (4th. Am. ed.) 1548; 12 Gratt. 642; 7 W. Va. 390; 4 Gratt. 93; 18 Gratt. 231.

HAYMOND, JUDGE, delivered the opinion of the Court:

In August, 1873, the West Virginia Oil and Oil Land company filed its bill with injunction thereon granted, as prayed therein, against John F. Vinal, defendant, in the circuit court of the county of Ritchie, West Va., in which said company alleged substantially, that it was a corporation organized under the laws of the State of Michigan and carrying on business in said county of Ritchie; that said company is the owner of a large and valuable tract of land in said county, which has for many years been producing and still is producing large quantities of petroleum oil; that said company had caused said land to be divided into a large number of sub-divisions, which it had leased out to divers parties for the purpose of boring and searching for petroleum oil, receiving in said cases a royalty of the oil obtained; and that said land is chiefly, if not only, valuable for the timber upon the same, and the deposits of oil underlying the surface thereof; that on or about the 10th day of July, 1873, the said Vinal, without any lease from said company and without any authority from said company whatsoever, entered into and upon a certain portion of the

company's said territory, which lies between lots 5, 6 and 7, Whetwood run, and lots A and B, occupied by one John A. Steel, and said lots 6 and 7, and commenced to cut timber therefrom, and out of said timber had constructed a derrick, and erected the same upon said premises, with the avowed determination to bore an oil well upon said premises, and use and appropriate the oil that may be obtained therefrom to his own use; and although often notified by said company, and forbidden by it "to do the unlawful act aforesaid," the said Vinal still persists in prosecuting the said unlawful acts, and threatens to continue the same.

The company also allege, that if the trespass aforesaid already committed by said Vinal and by him threatened to be continued as aforesaid, is allowed to go on, it will become a nuisance and a constant grievance to the company, calculated to produce and producing irreparable damage to the company, which cannot be remedied in an action for damages at law; that inasmuch as the said Vinal arrogates to himself the exclusive possession of said well, the company would not in an action at law be able to prove the amount of oil produced from said well converted by said Vinal to his use. The company also charges upon information and belief, that the said Vinal threatens to cut more timber upon the said premises, erect more derricks thereon, and put down other wells for the obtaining of petroleum oil. All which acts and doings on his part are without any lawful authority of the company or its agents. The bill then prays that the defendant, Vinal, his agents, servants, &c., may be enjoined, restrained and prohibited from cutting any timber upon said premises, from boring any oil wells thereon, and from committing any further trespass thereon, or interfering with the company in the enjoyment thereof; and that on final hearing said injunction may be made perpetual; and for general relief, &c.

The injunction seems to have been granted by the judge of the circuit court of Ritchie county, as prayed in the

bill on the 12th of August, 1873. The summons was issued in the cause on the 14th day of August, 1873, with the usual endorsement thereon in such case, and that bond with security had been given by the plaintiff, &c. On the 25th day of August, 1873, the judge of the circuit court of the said county of Ritchie, in vacation, and upon notice and motion to dissolve the said injunction, made the following order and decree in the cause, viz:

"Notice having been given by the defendant and duly served upon the plaintiff that he would, on the 25th day of August, 1873, make a motion before the undersigned, in chambers, to dissolve the injunction heretofore awarded in the above styled cause, and that the defendant's answer would be relied on in support of said motion, the said motion came on to be heard upon the bill and the said order of injunction and the answer of defendant, with a general and special replication tendered, and was argued by counsel. On consideration whereof, the undersigned is of opinion that it sufficiently appears that there was and is a parol agreement existing between the plaintiff and defendant, under which the defendant entered into the possession of the land in the bill mentioned, and put down a well or wells thereon for the purpose of boring for oil, and that the plaintiff has received from the defendant the rent or royalty for the same. But the undersigned is further of opinion that it does not sufficiently appear what the nature of said contract was, whether it was a license for a term of years, and the conditions upon which the defendant was let into the possession of said premises; therefore the undersigned is of opinion not at this time to dissolve said injunction. It is therefore adjudged, ordered and decreed, that the said motion to dissolve said injunction be and the same is overruled. But it is further adjudged, ordered and decreed, that the said J. F. Vinal, if he elect so to do, may suspend the operation of said injunction upon his giving a bond, with good security, in

a penalty of $500.00, conditioned to pay all such costs and damages as may be incurred by the plaintiff by reason of the said J. F. Vinal being permitted to use said premises for the purpose of boring for oil thereon; and thereupon the said J. F. Vinal, with J. Garber, executed and acknowledged said bond before the undersigned. And leave is given the defendant, Vinal, to file an answer at rules or a cross-bill setting up his contract with the plaintiff, its nature, extent, character, conditions and terms, and praying for specific execution thereof, if he should elect so to do."

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

From this order and decree the said Vinal obtained an appeal to this court and afterwards, on the 2d day of March, 1874, this court made and entered the following decision and decree in the cause, viz:

"Upon an appeal from a decree rendered by the Hon. James M. Jackson, judge of the circuit court of Ritchie county, in vacation, on the 25th day August, 1873, the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel thereupon, is of opinion for reasons stated in writing and filed with the record, that there is error in said decree. It is therefore adjudged, ordered and decreed, that the decree dissolving the injunction in this cause be reversed and annulled, leaving the injunction in full force, and that the appellant recover of the appellee its costs about the prosecution of its appeal in this behalf expended; and this cause is remanded to the circuit court of Ritchie county, to be proceeded in as if the motion to dissolve and order of suspension had never been made, which is ordered to be certified to the circuit court of Ritchie county."

Vinal's answer to the company's said bill referred to in said decree of the 25th day of August, 1873, is in the form of a demurrer and answer. The demurrer as set out in the answer is general. The answer admits that the plaintiff (the said company) is a corporation organized under the laws of the State of Michigan, and

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

carrying on business in the county of Ritchie, State of West Virginia; and that the said company is the owner of a large and valuable tract of land in said county, which is producing, and for many years has been producing, large quantities of petroleum oil, and that the land is chiefly, if not only, valuable for the timber upon the same and the deposit of oil underlying the surface thereof. The answer further proceeds:

"Respondent further answering denies that he did on or about the 10th day of July, 1873, without any leave from the plaintiff, and without any authority from the plaintiff whatever, enter upon the portion of the plaintiff's territory which lies between lots 5, 6 and 7, Whetwood run, and lots A and B, occupied by John A. Steel, and lots 6 and 7; but on the contrary thereof, this respondent desiring to enter upon that portion of the territory of the said plaintiff, as described in his said bill, for the purpose of boring for oil, in the spring of the year 1872, entered into negotiations with B. S. Compton, the president of the plaintiff, who this respondent avers and charges had power and authority to act for and on behalf of the plaintiff in contracting for leases and leasing the said territory of the plaintiff for oil purposes. And this respondent charges that as the result of such negotiations, at about the month of May, 1872, he did enter upon the land described in said bill by virtue of said negotiations, and proceeded to drill oil wells thereon and to pump oil from the same when so drilled.

"And respondent further answers, that as a part of said negotiations it was understood and agreed between him and the said B. S. Compton, that leases for the said territory should be made out in due form, properly executed by the plaintiff and delivered to this respondent, except the lots 6 and 7, and the leases for those two lots were to be made to this respondent and one C. Coville, jointly.

"Respondent further avers, that by virtue of the said contract and agreement this respondent entered upon the

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

said land and expended large sums of money in developing the same, and bored several oil wells thereon, and produced large quantities of oil therefrom, one-third part of which he has delivered to the plaintiff as rent or royalty under the contract and agreement made by the said Compton with respondent.

"And respondent answers and avers that he has been in possession of the said land, upon which he is now called a trespasser in said bill, all the time since about the month of May, 1872, under and by virtue of the agreement aforesaid, and has been during all that time and up until the granting of the injunction in this cause, openly and notoriously operating thereon for oil and producing the same thereon. And the plaintiff, its officers and agents, being fully informed of the contract and agreement between this respondent and said Compton, have during all that time, by accepting rent from respondent and in various other ways, acknowledged the authority of the said Compton to make the said agreement with respondent, and that the same was valid and binding upon the said plaintiff. And respondent has paid to the said plaintiff, as rent from said land, oil to the value of at least the sum of $3,000.00 within the time aforesaid.

"Respondent files herewith two letters, written and addressed to him by the said B. S. Compton, which respondent received by due course of mail, showing on the part of said Compton the recognition by him of the contract and agreement aforesaid, and the binding force of the same. The letters are marked A and B respectively, filed herewith, and asked to be read as a part of this answer.

The said Vinal in his answer further alleges that said Compton having authority to bind the said company in the granting of leases for all purposes, the said letters "A" and "B" are a sufficient memorandum or note in writing of the agreement of said Compton to lease the said land to him, Vinal, and that the company having full knowledge that he, Vinal, was operating on said land

by virtue of the contract between him and the said Compton thus made, and accepting rent from him, Vinal, and otherwise recognizing the said agreement and that the same was binding upon the said company.

He also avers that soon after the receipt by him of the said letters "A" and "B," by due course of mail he showed them to Wm. H. Beach, then, as now, the agent of the plaintiff, and the same person who swore to the plaintiff's bill and at that time the said Beach, as such agent, fully recognized the right of him, Vinal, to be and remain upon said land, and operate the same for oil purposes, and did not at that time claim or even hint that he, Vinal, was a trespasser upon said territory, and at the same time the said Beach read to him the letter of the said Compton referred to by the latter in his letter of November 7, 1872, to him, Vinal, which said letter to Beach was about the same effect as the said letter of November 7th, and often since the showing of the said letters to the said Beach he has, as the agent and superintendent of the plaintiff, accepted rent of him, Vinal, on account of oil produced by him on said land.

Vinal admits that shortly before the suing out of the injunction in the cause he sent some of his employes upon the said land for the purpose of cutting timber for the erection of a derrick for the sinking of another oil well on said land in addition to the ones already sunk by him, which he alleges he had the right to do under and by virtue of the contract for a lease as aforesaid; but he denies that it was, or is, his avowed intention of appropriating the oil, which should or might be produced from said well, to his own use; on the contrary he alleges that it was and is his intention, when and if oil shall be produced from said wells, to pay the royalty of one-third thereof to the plaintiff, as he has done in respect of all other wells bored by him on said territory. Said Vinal further answers:

" Respondent denies the allegations in said bill contained, that the said plaintiff has often notified this respondent to cease the said acts on the said land; on the

1879 Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O,
L. Co.

contrary, the respondent says that the notice filed herewith marked "C," and prayed to be read as part hereof, is the only notice, either verbal or written, which respondent has received in relation to his operation on said land. And he does not admit that such notice was given by the authority of the plaintiff, and calls for full proof of such authority. And respondent denies the right of plaintiff to affect his interest in or right to the possession of said land for oil purposes by any notice whatsoever.

*1879 Special Term.*

*W. Va. O. & O. L. Co, v. Vinal and Vinal v. W. Va. O. & O. L. Co.*

"Respondent, further answering, denies that the acts done and committed by him on said land constitute a trespass on the same, and denies that if the same are continued, they will become a nuisance and constant grievance to the plaintiff, producing and calculated to produce irreparable damage to the plaintiff, but, on the contrary thereof, respondent charges that the acts so done and committed by him upon said territory were done by him in pursuance of the rights acquired as hereinbefore set forth, and that the same are not calculated to impair the value of said land, or work any irreparable damage thereon ; that the plaintiff having charged in his bill that said land was chiefly valuable for the oil underlying the surface thereof, the boring of an oil well thereon, which would cost a large expenditure of money, would, if oil was obtained thereon, largely enhance the value of said territory. Respondent emphatically denies that he has arrogated to himself the exclusive possession of said well when so bored, but, on the contrary, avers that he would fully pay the royalty reserved in the oil produced from the same and render a true account thereof, and the oil as pumped from the well would be, in this instance as in all others, open to the inspection and measurement of the plaintiff itself or its officers or agents.

"Respondent admits that it was his intention to cut other timber on the premises, erect other derricks thereon, and put down other wells for the purpose of obtaining oil; but denies that it was his intention to cut more timber than was necessary for the erection of said derricks

82

and rigs. And respondent further says that the principal part of all the timber necessary for the erection of the derrick and rig, of which the plaintiff particularly complains, was purchased by respondent on territory other than that mentioned in the bill, and only a small part of said timber for said derrick and rig was cut on the said land in possession of respondent as mentioned in said bill.

"He also alleges that all his acts and doings were with lawful authority granted to him by the plaintiff by its agents as hereinbefore set forth; and he prays that the injunction granted in the cause be dissolved and the bill be dismissed, and that he be suffered to go hence with his reasonable costs, &c." Exhibit "A," filed with said answer, is as follows:

"TOLEDO, O., November 7, 1872.

"*Dear Col.:* Mr. Beach has written me again at your request, he says, as to lots 6 and 7, Whetwood run, saying you had written several letters on the subject, and I had not responded; and I am surprised to hear so, as I not only said to you all I know yet as I know, and also to Mr. Beach, and have *agane wrote* him also by this mail. I promised you and Coville all that *parsal* of land *outsid* of what was then being used by Coville and Garber and Gilchrist, together with 6 and 7, Whetwood run, on same terms as Coville and Garber and Gilchrist, for this includes 6 and 7 also, and you and Coville said you would take care of Beach, Gilman and Barnum, and before I left there Barnum said "he rather" go off by himself up on line of Mount farm, and I consented, and said to Gilman and Beach they could do likewise if desired, and I reported same to you, and said if they all went upon their own offer you would have all this part with lots 5 and 6, &c. Now I don't see what the point is, and I will look over all your letters and see if I can find out. You advise me whether or not I am mistaken; if so, I will make all right to the best of my ability. Please see my letter to Beach, and look over my letter to

you. If I have not written in one or two letters, I meant to have *written*.

"Yours very truly,

"B. S. COMPTON.

1879
Special Term.
W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

"P. S.—Kindest regards to Mrs. V. and others. I was in hopes to see you up here before this." (The last line unintelligible.)

Exhibit B, filed with the foregoing answer, is in the words and figures following, to-wit:

"MONROE, MICH., Jan. or June 8, 1873.

"*Dear Col.:* Yours is at hand and contents noted, to which I will breafly say I am not little surprised at my being caled upon to interfear with eny one in teritory give you and Coville for oil purposes, as I will understand that you and Coville was to have such territory, &c., provided as required by others whome most of them had gone elsewhere, &c., eny act of you and Coville's should not place me to interfear with others of rites granted them by you and Coville; them there matters should be settled amongst yourselves. I now think I shall be at Petroleum next weak, and will see further. I not yours in regard to Woulf & Co.

"Yours very truly,

"B. S. COMPTON."

Exhibit "C," filed with said answer, is as follows:

"PETROLEUM, W. VA., July 30, 1873.
"JOHN F. VINAL, ESQ., *Volcano, W. Va.*

*Sir* :—You are hereby forbidden to sink any more wells upon the territory of this company which lies between lots five, six and seven, Whetwood run, and lots A and B, now occupied by John A Steel, or upon either of said lots numbered six or seven, Whetwood run, or any other territory of this company, of which you have not a written lease from this company. And you are also forbidden to cut any timber or trees upon any of such lots or territory, for any purpose whatever. Any attempts on your part to do so will be treated as a trespass

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

and without the consent or sanction of this company, and at your peril.

"By order of the board of directors and executive committee of said company.

"[Seal.]　　　　　　　　"C. L. COLEMAN,
　　　　　　　　　　　　　　　　"Secretary."

To the said answer of said Vinal the company filed its replication, which is substantially as follows : " This repliant, saving and reserving unto itself all manner of advantage of exception to the manifold insufficiencies of said answer, replies generally thereto, and for matter of special replication to said answer, this repliant says, that it is not true, as alleged in said answer, that B. S. Compton, the president of said repliant, had or has power or authority to act for said repliant in contracting for leases and leasing the said territory mentioned in said answer. And repliant avers that the business management of this repliant is vested in a board of directors and executive committee, who alone have power to contract for and make leases on the lands of said repliant, and to appoint agents so to do. And this repliant avers that the negotiations and contract between the said defendant, John F. Vinal, and B. S. Compton, mentioned and referred to in said answer, if made or had at all, which this repliant does not admit as in said answer alleged, was made and had between said defendant and said Compton, the latter acting in his individual capacity and not as president of this repliant, as will fully appear by reference to the exhibits A and B filed with the answer of said defendant.

"And further replying, this repliant denies that it was understood or agreed between said Compton and said defendant, that leases should be made out for said territory in due form, properly executed by this repliant or otherwise, and delivered to said defendant as alleged in said answer ; but, on the contrary thereof, this repliant avers that the only contract made by and between said Compton and said Vinal, the defendant, was a mere parol

license, indefinite in its terms and temporary in its nature, in the boring of wells upon said territory, revocable by said Compton at his pleasure.

"And further replying, this repliant admits that it has received a portion of the oil already taken by the said defendant from said premises as royalty, but avers that it did not receive the same with reference to any lease or agreement for a lease for said territory, made between said Compton or this repliant and said defendant, but only with reference to the parol revocable license aforesaid. And this repliant avers that as it is advised and believes if the receiving by it of oil as royalty as aforesaid from the wells already bored upon said territory should be construed into a recognition by it of the parol license so granted by said Compton individually to said defendant, then this repliant has the same right to revoke the same as the said Compton might or could have, and this repliant refers to said paper, marked Exhibit C, filed with said answer, which is signed by the secretary of this repliant with repliant's corporate seal affixed thereto, to show that this repliant has formally revoked said license as to the boring of any further wells on said territory; and repliant avers that the attempt on the part of said defendant to bore another well on said property and his threat to bore more wells thereon, after the service of said formal and official notice, constitute the continuing trespass and grievance complained of in said bill; and repliant says that the lease made by it in due form as referred to in said answer is for a term of more than one year, and that inasmuch as no memorandum or note thereof in writing was made or signed by repliant, or any officer or agent thereof acting or pretending to act by the authority of repliant, the said alleged contract in said answer set forth is utterly null and void under the statute of frauds, upon which repliant relies as fully as if the same were now specially pleaded; and repliant alleges that it is advised and believes, that even if the matters set forth in said answer should be construed to con-

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

stitute any agreement whatsoever between this repliant and said defendant, the same would be and is, both in law and equity, utterly void, because there was no consideration therefor of any kind passing from said defendant to repliant; and repliant alleges that the acts of part performance on the part of the defendant, relied on in his answer were only recognized or permitted by repliant with reference to the parol license aforesaid existing between said Compton and said defendant; and repliant denies that said defendant has been in possession of said land under the agreement mentioned in his answer, or any agreement whatsoever, and alleges that such possession has been limited and confined to the wells which he has already bored upon said territory and so recognized by repliant, all of which matters and things repliant is ready and willing to prove," &c.

On the 1st day of May, 1874, at a circuit court held for the said county of Ritchie, the said circuit court made and entered the following decree in the cause, viz:

"THE WEST VA. OIL & OIL LAND CO.
vs.
JOHN F. VINAL.

⎱ In chancery.

and

JOHN F. VINAL,
vs.
THE W. VA. OIL & OIL LAND CO. AND
CORRYDON COVILLE.

Upon a cross-bill filed in the above cause.

This day came the said John F. Vinal upon leave of the court first had and obtained for the purpose, and filed here in court his cross-bill in the above causes, and upon his motion and in conformity to the prayer of the said cross-bill, it is adjudged, ordered and decreed that B. F. Mitchell, the sheriff of the said county of Ritchie, who is hereby appointed a special receiver for that purpose, is hereby authorized to take into his possession and control the oil now on hand heretofore produced or hereafter to be produced from the well in said cross-bill mentioned to safely keep the same, subject to the further order of

the court, and that he do at such times as in his judgment shall be necessary or for the advantage of the parties interested, proceed to sell said oils, or so much thereof as he may deem proper, on the best terms he can, either on credit or for cash, and out of the proceeds of such sale, he do pay the expenses of running said well and transporting and marketing said oil, and the residue thereof subject to the further order of the court; and in case the said special receiver shall sell any of the oil upon credit, he is required to take negotiable paper therefor, with good security, payable at a time or times certain not to extend beyond the next regular term of this court. And before entering upon his duties as such special receiver, the said B. F. Mitchell shall file with the clerk of this court bond, with security to be approved by said clerk in the penalty of $5,000.00, conditioned for the faithful discharge of the duties of his said office, and said cross-bill is sent to rules, and the plaintiff has leave to sue out proper process thereon."

The cross-bill so filed by said Vinal is substantially as follows:

"Humbly complaining showeth unto your honor your orator John F. Vinal, that the West Virginia Oil and Oil Land Company, a corporation created, organized and existing under and by virtue of the laws of the State of Michigan, is the owner of a large tract in fee simple of land in the county of Ritchie aforesaid, which is valuable chiefly on account of the petroleum or oil undelying its surface, and the timber thereon, and that said company has caused said large tract to be sub-divided into a large number of sub-divisions, and caused a plat thereof to be made, on which the most of said lots or sub-divisions have been and are designated by numbers or letters, and has for many years been leasing out portions of the said territory to various persons for the purpose of searching for petroleum and other oils thereon; and such leases have usually and generally been and are for the term of fifteen or twenty years from the date thereof, and

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.

the rent paid by such lessees for the use of such territory is a one-third part of all the oil produced thereon. The said company has let a large number of the said sub-divisions in the manner above set forth, and has been and is now carrying on an extensive business in oil in this way. That said company on the —— day of May, 1872, by and through one B. S. Compton, who was then the president of said company, and has been ever. since and now is, entered into a contract with your orator and one Corrydon Coville, jointly, whereby the said company, by and through its said president, agreed and contracted to lease to your orator and said Coville, jointly, a parcel of said large tract of land known as lots six and seven. And also to lease to your orator another parcel thereof, known as the 'Gore,' and situate between the. parcel known as lots 'A' and 'B,' and now occupied by one John A Steele, for the purpose of boring thereon for oil; and the said Compton, acting for the said company, then and there agreed that said company would cause leases to be made out for said parcels, as aforesaid, in the usual form of leases granted by the said company to tenants for the purpose of boring for oil, and that such leases should be for the usual term of years usually made by said company to tenants, and for the usual rent of one-third of all the oil produced thereon to be paid to the said company.

"Your orator files herewith one of the leases of the said company, such as it generally makes to tenants for the purpose of boring for oil, and asks that it may be read as part of this bill, marked "No. 1," and charges that . said contract for said leases was made with reference to such a lease, and that all the contracting parties at the time were fully informed as to the form, terms and stipulations contained in leases made by said company to its tenants for the purpose of boring for oil. And your orator further shows that the two tracts so agreed to be leased as aforesaid are well defined in boundaries and location. Your orator further shows unto your honor

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

that he and the said Coville, having confidence in the honor and integrity of the said Compton and other officers of the said company, and expecting that said leases would be delivered to them as soon as they could be prepared and forwarded from the city of Monroe, in Michigan, where the principal office of the company is situated, did not require that said contract should be reduced to writing and signed at the time; but in pursuance of said contract, your orator entered upon the said tract the last of May or first of June, 1872, known as the "Gore," and has remained in possession thereof ever since, and is still in possession thereof, and has made permanent and valuable improvements thereon on the faith of said contract; in doing which he has expended large amounts of money. Prior to the first of July last, your orator had sunk two oil wells on the said "Gore," and had obtained oil in each of them, and had delivered according to the terms of said contract to the said company, one-third of all the oil produced thereon as rent, which said company, by its authorized agents, received as rent, and your orator and the said Coville, in pursuance of said contract and relying upon the specific execution thereof by said company, at once entered upon the said parcel known as lots 6 and 7, and have been in exclusive possession thereof ever since, and have made valuable and lasting improvements thereon on the faith of said contract by sinking an oil well thereon in November and December, 1872, from which they have produced a quantity of oil, one-third part of which they have delivered to said company as rent under the terms of said contract, and which the said company has received as such. That sometime in the month of July last he, Vinal, proceeded to bore for a third well for oil on the Gore, when the said company filed its bill in equity against him in your honor's said court, claiming that he was a trespasser on said two tracts herein particularly set forth; that he had no contract for a lease thereof, or that if there was such a contract, it was null and void, because the said Compton

83

had no authority to bind the said company in making such contract, and because said contract was not in writing and signed by said company or its agent, and praying for an injunction to restrain him, Vinal, from boring any more wells on said two parcels of land, which said injunction was granted. That he, Vinal, answered said bill, and the said order of injunction was suspended on terms, which order of suspension was afterwards vacated, which will more fully appear by reference to said cause of said company against him, which is still pending and undetermined in this court, which is hereby referred to and asked to be read with this bill. And especially he refers to his answer to said bill, and prays that. his said answer, and all the exhibits therewith filed, may be taken and considered as a part of this bill."

,He further alleges that said Compton was the agent of said company for the purpose of granting or contracting for letting of leases; that said company ratified said Compton's contract made with him and said Coville as aforesaid by accepting from him and them rent due by virtue of said contract after the existence of such contract was known to the other officers and agents of said company. Vinal also further says :

" And your orator files herewith as part of this bill marked No. 2 a notice received by him from William H. Beach, who was then the general superintendent of said company and had general charge, control and direction of all their business in this State, whereby said company recognizes said contract and your orator as its tenant. Said notice must of necessity refer to the parcel of land called the "Gore," and lots 6 and 7, as your orator never leased any other territory of said company, never was in possession of any other of their said territory, and never operated in any other part thereof, directly or indirectly.

" Your orator is advised, believes and so charges that the letter written by said Compton to him and exhibited with his said answer and referred to as part of this bill is a sufficient memorandum in writing to charge said com-

pany, and he further charges, that having entered into possession of said property by virtue of said contract and having made valuable and permanent improvements thereon on the faith of said contract, he and said Coville are in a court of equity entitled to a specific execution thereof, though there were no memorandum thereof in writing.

*1879*
*Special Term.*

W.Va.O.&O.L.
Co.
v.
Vinal
and
Vinal
v.
W.Va. O.&O.L.
Co.

" Your orator further alleges and charges that there was not, as claimed by said company's special replication to your orator's answer hereinbefore referred to, a verbal license to your orator to enter on said territory, and bore for oil at the pleasure of said company or the said Compton ; but your orator charges that both he and the said Coville entered by virtue of said contract, and that he would not, and he believes that said Coville would not, have entered upon said territory and bored for oil, and expended large sums of money in improving said premises, but for the fact of such contract. In the production of oil from under the surface of the earth, it often happens that the *'production of one well will not pay'* the pumping thereof, while the production of several wells at convenient distances from each other and run or pumped by the same machinery, will pay very handsomely. And your orator alleges that he would not, and he believes no sane man would, enter upon any territory for the purpose of boring for oil under any arrangement whereby he might at any time be stopped from boring other wells on the same territory.

"Your orator further shows unto your honor that during the time that the order suspending the said injunction was in force, he completed the boring of the well commenced by him in July last on the said "Gore," and produced oil therefrom, and since the vacation of the said suspending order, he is not advised whether he is entitled to continue to pump the said last mentioned well or not. If he is not and the same is allowed to remain idle without being pumped for any considerable time experience has shown that the said well would soon become

1879
Special Term.
W.Va.O. & O. L.
Co.
v.
Vinal
and
Vinal
v.
W.Va. O. & O. L.
Co.

wholly worthless, and your orator would thereby suffer great damage; besides your orator can pump the three wells which are situated a convenient distance from each other with very little cost in addition to what it costs to pump the other two. In consideration of the premises, and as your orator has no remedy save in a court of equity he prays that the said West Virginia Oil and Oil Land Company and Corryden Coville may be made defendants to this bill and required to answer the same and every allegation thereof under oath fully and particularly as the same are herein set forth; that your orator may be allowed to file this his cross-bill in the said cause of the West Virginia Oil and Oil Land Company against your orator and that this bill may be taken, heard and considered with that cause; that the said company may be decreed to specifically execute the said contract by making to your orator and said Coville a lease for the said parcel of land known as lots 6 and 7, and to make a lease to your orator for the said 'Gore' in accordance with the said contract; that if the court shall be of the opinion that your orator is restrained by said injunction from pumping said third well sunk while said suspending order was in force, that then a special receiver may be appointed to receive said oil as pumped, and convert the same into money, and pay the expenses of the pumping, transporting and selling thereof and hold the residue of such proceeds subject to the order of the court."

He then prays for general relief, &c.

Exhibit No. 2 filed with the said cross-bill is as follows:

"*Office of the West Virginia Oil and Oil Land Company, Producers and Dealers in Pure West Virginia Lubricating Oils.*

"PETROLEUM, W. Va., June 29, 1872.

"*To* COL. J. F. VINAL, *or whom it may concern:*

"Please take notice that by an order received from Col. B. S. Compton, chairman of the executive committee of West Va. O. and O. L. Co., no oil well will be allowed to be bored nearer than twenty feet to any outside line of

any lot or lease or bordering upon or adjoining any other lot or lease on W. Va. O. and O. L. Co.'s property.

> "Yours respectfully,
>
> "W. H. BEACH, *Acting Supt.*"

Endorsement thereon :—"Received July 1, 1872, by the hands of Barnum G. Compton, at 8:30 P. M.

> "J. F. VINAL."

It appears that on the 24th day of September, 1874, the said Vinal filed in the clerk's office of the circuit court of Ritchie county, a supplemental bill in the cause. In this supplemental bill the said Vinal after referring to the original bill of said company filed in the cause and reciting its contents and charges to a large extent, and also after referring to said cross-bill and the filing thereof and quoting therefrom at length, says :

"Your orator charges that he entered upon said lots 6 and 7 under said contract in said cross-bill mentioned for said leases and has ever since until recently, together with the said Coville, used and enjoyed the possession of said lots, and although the right to use and occupy said lots by your orator was not disputed by said company until shortly prior to the filing of said cross-bill, and although said company well knew, that your orator had filed his said cross-bill seeking to enforce specific execution to him and the said Coville for said lots, yet said company wholly disregarding the rights of your orator in the premises, and to oust your orator from the possession of said lots pending said suit, has, by one J. C. Gilman claiming to act as agent for said company and for and on behalf of said company, or claiming said premises under said company, entered upon said lots since the filing of said cross-bill, and commenced and is now prosecuting the work of boring for oil on said lots, and said company and said Gilman threaten that they will continue to prosecute said work until oil is obtained, and when the oil is obtained will pump the well or wells so found by them, and take the entire produce thereof to their own use.

*(margin:)* 1879 Special Term.

W. Va. O. & O. L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O. L. Co.

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

"Your orator charges that he is advised by counsel that he is entitled to and will have decreed to him specific execution of the contract as prayed for in his said cross-bill.

"Your orator further charges that being so entitled to said lots 6 and 7 jointly with said Coville, if the said company and the said Gilman continue to operate the same and obtain the oil therefrom, that the estate of your orator therein will be greatly diminished if not wholly destroyed, and that great irreparable damage will be done your orator, and that your orator cannot have a full and adequate remedy at law.

"Your orator further charges, that being in the possession of said property jointly with the said Coville at the time of the filing of said cross-bill, your orator did not know that the said company would attempt to oust him from the possession thereof, or would, pending the litigation in reference to same, enter upon the property and prosecute the work of boring for oil thereon, wholly disregarding the rights of your orator in the premises.

"In tender consideration whereof, and inasmuch as your orator is remediless save in a court of equity where matters of this kind are properly relievable and cognizable, your orator prays that he be permitted to file this his supplemental bill to be read with and as a part of said cross-bill; that the said company, J. C. Gilman and C. Coville be made parties defendant to this bill, and that they and each of them be required to answer the same, and each and every allegation thereof, under oath, that the said company and the said J. C. Gilman, their agents, servants and employes, may be enjoined, restrained and prohibited from boring any oil well or wells on said lots six and seven, or from pumping any wells so bored by them on the same, and from committing any further trespass thereon, or in any manner interfering with your orator in the rightful possession of the same; and that upon a final hearing said injunction

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

may be made perpetual, and that your orator may recover his costs, &c."

Then follows a prayer for general relief.

The said supplemental bill appears to have been verified by affidavit of said Vinal. And an injunction was granted by the judge of said circuit court as prayed by said Vinal in said supplemental bill. It appears, that on the 23d day of November, 1874, the said circuit court made and entered this order :

"The West Va. O. & O. L. Co. ⎱
   vs.                         ⎰ In chancery,
   John F. Vinal,
   Upon an injunction,
   and

   John F. Vinal ⎱
      vs.         ⎰ In chancery,
The West Va. O. & O. L. Co. ⎰
   Upon a cross-bill, &c.

" The defendant, the West Virginia Oil and Oil Land Company, to the cross-bill and supplemental cross-bill filed in the first of these causes, filed here in court a demurrer to the said cross-bill ; and also the said defendant and the defendant, J. C. Gilman, their joint and several demurrers to the said supplemental cross-bill, which demurrers on motion of said defendants are severally set down for argument."

It appears that the causes of demurrer assigned by the company in its demurrer to the said cross-bill are : "1st. The said cross-bill makes one Corrydon Coville a party defendant, he not being a party to the original bill. 2d. The said cross-bill is multifarious, because the same combines two separate and distinct alleged causes of action on behalf of the said plaintiff—one against the defendant in reference to the 'Gore' tract in favor of John F. Vinal individually, and one against this defendant in reference to lots number six and seven in favor of the said Vinal and Corrydon Coville, jointly. 3d. The said Coville is improperly made a party defendant to said cross-bill."

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

The joint and several demurrer of said company and Gilman assigns three causes of demurrer to said supplemental bill which are as follows: "1st. The supplemental cross-bill makes Corrydon Coville and J. C. Gilman, parties defendant, they not being parties defendant to the original bill. 2d. The said supplemental cross-bill is multifarious, because the same combines three separate distinct alleged causes of action; one on behalf of plaintiff against the West Virginia Oil and Oil Land Company in reference to the 'Gore' tract; one on behalf of said plaintiff against said company and Cerrydon Coville jointly in reference to lots Nos. six and seven; and one against said company, Corrydon Coville and J. C. Gilman, jointly. 3d. The said Corrydon Coville and J. C. Gilman are improperly made parties defendant to said supplemental cross-bill."

It appears, that on the 24th day of January said circuit court on the petition in writing of said company verified by affidavit ordered, that a rule issue against "the defendant and B. F. Mitchell, special receiver of oil well in this cause returnable to that court on Thursday, the 26th day of November, 1874, requiring them to show cause, if any they could, why the said B. F. Mitchell should not be removed from his office as special receiver, and the order appointing him be set aside.

It does not appear in the record here, what, if any, further action the court took upon said rule. But it appears that on the 25th day of November, 1874, the said company caused to be docketed in the court, a notice of a motion to dissolve the injunction theretofore awarded upon the supplemental bill aforesaid. The notice states that the motion to dissolve will be made on the 25th day of November, 1874, when demurrers and answers will be filed and relied upon in the hearing of the notice.

It further appears that on the said 25th day of November, 1874, the said circuit court made and entered the following order and decree in the causes, viz: "The

West Virginia Oil and Oil Land Company *v.* John F. Vinal, in chancery, and John F. Vinal *v.* The West Virginia Oil and Oil Land Company, Corrydon Coville and J. C. Gilman, upon a cross-bill and supplemental cross-bill.

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

The court having maturely considered the joint demurrer of the defendants, the West Virginia Oil and Oil Land Company and J. C. Gilman, to the cross bill and supplemental cross-bill in the second of the above named causes, is of opinion to and does sustain said demurrer to so much of said cross-bill and supplemental cross-bill, as makes said Coville a party defendant to this suit and relates to the said contract of said company with said Vinal and Coville for a lease for that portion of the territory mentioned in this suit, known as lots 6 and 7, and prays for the specific execution thereof, and said cross-bill and supplemental cross-bill be dismissed as to the said Coville, and all of the said cross-bill, which relates to and asks a specific execution of said alleged contract as to said lots 6 and 7, is ordered to be and is hereby expunged from said bill and held for naught, and as to the residue of said cross-bill and supplemental cross-bill, the demurrer is overruled."

It further appears that on the day and year last aforesaid the company filed in court a separate answer to said cross-bill, to which the plaintiff therein replied generally, and that the said company and the said defendant Gilman filed their joint and several answers to the said supplemental cross-bill, to which the plaintiff therein replied generally. The answer of the company to the cross-bill is substantially as follows :

" The separate answer of the West Virginia Oil and Oil Land Company to the cross-bill of John F. Vinal against said company and Corrydon Coville filed in the circuit court of Ritchie county.

" The said defendant, reserving to itself all and all manner of exceptions to said cross-bill for the many errors and uncertainties therein contained, for answer there-

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

unto says that it is true as in said cross-bill alleged, that this defendant is the owner in fee simple of a large tract of land in said county, valuable for the purposes therein named, and that the same has been sub-divided, and leases have been made of some of said sub-divisions to divers parties for the purpose of boring for petroleum oil, and that said leases when made have been made with a reservation of one-third of the oil produced as royalty; and the defendant denies that the same were always made for the term of twenty years, and but one lease, and that for ten years, has been executed on behalf of this defendant within several years, and that one was so executed by direction of its executive committee to R. W. Gilchrist.

"And further answering, this defendant positively denies that at the time alleged in said bill, or at any time, it made through its said president, B. S. Compton, or in any manner whatever, the contract alleged in said cross-bill with said Vinal, and said Vinal and Corrydon Coville, jointly. And this defendant avers, that it never has in any manner whatever agreed to lease the territory mentioned in said cross-bill, or any part thereof, to said Vinal and Coville, or either of them, separately or jointly, or promised to make out to them written leases therefor, as in said cross-bill alleged.

"And this defendant, further answering, alleges that at or about the time mentioned in said cross-bill, this defendant, by B. S. Compton, its president, gave a verbal license or permit to said Vinal to put down a well on said tract known as the 'Gore,' whereon several other wells were then bored, and were being operated by other parties upon the following terms and conditions: That whenever oil should be obtained in said well, the said Vinal should file a log of said well and a correct statement of the expenses thereof including cost of all machinery down to the time of the commencement of pumping the same, and at the expiration of three months or ninety days from the time of the commencement of

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

said pumping this defendant should have the right to take up said well, and resume possession thereof upon paying to Vinal the actual cost thereof, and the machinery thereon so to be shown by said statement as aforesaid. And it was also then and there agreed that the said Vinal should pay one-third part of the oil produced from said well to said company from the time of the commencement of said pumping until the company should take the same up; and that no more than one well shall be bored upon said 'Gore' by said Vinal unless by the company's consent. And afterwards the said contract was extended so that the said Vinal was permitted by this defendant to put down a second well upon said 'Gore.'

And further answering this defendant avers, that it did not, by the terms of said verbal license grant to said Vinal any exclusive right to the use or possesion of said "Gore," but only the right to put down two wells thereon upon the terms aforesaid. And this defendant further says, that the said Vinal wholly failed to file in the defendant's office logs of said wells, or statements of the cost and expenses of said two wells within ninety days after the commencement of the pumping of oil therefrom, or at any time whatever; and although often requested so to do, has fraudulently and wickedly refused to perform his contract in that behalf, so that thereby this defendant has been defrauded out of its right and privilege of taking up said wells. And further answering, this defendant admits, that in the month of July, 1873, the said Vinal proceeded to put down a third well upon said Gore, and that the defendant thereupon filed its said bill of injunction thereto, as in said cross-bill alleged, and the defendant prays, that said bill of injunction may be taken and read as a part of this answer; that said Vinal was not only putting down said third well without any authority whatever, but was also intending and threatening to put down other wells upon the territory of this defendant, all of which actings and do-

ings constituted the waste and continuing trespass in said bill mentioned, and which the same was filed to enjoin and prohibit. And the defendant admits that the said order of injunction was afterwards suspended, and avers that the order suspending the same was afterwards reversed by the Supreme Court of Appeals and said injunction re-instated.

"And this defendant further avers that the said Vinal, well knowing that this defendant has claimed by its said suit the entire production of said third well, has wickedly and fraudulently pumped the oil therefrom into the same tank with the oil produced from the first and second wells, wherein this defendant claims one-third only of the oil produced, so that it now is and must forever remain uncertain as to what has been the exact production of each respective well, no one producing the same quantity. This defendant has been greatly embarrassed in making any proper estimate of what amount of royalty it has been entitled to receive from said wells Nos. 1 and 2, owing to the admixture thereof with the product of said third well. And this defendant avers that the said mixing and confusion of said oils by said Vinal was purposely done by him with the intent to compel this defendant to forego all claim to royalty from said wells Nos. 1 and 2, or else unwittingly to receive some portion of the pumped oil from said well No. 3, and then to claim such receipt thereof as an acknowledgment of his rights as claimed by him in his cross-bill. And defendant avers that it has always refused to receive oil as royalty from well No. 3, and so informed said Vinal, and so instructed its agents whose duty it was to collect its royalties, and never has received any oil from said third well as such either as royalty or otherwise.

"And further answering, this defendant denies that it made by B. S. Compton, its president, or otherwise, the contract for a lease of lots Nos. 6 and 7 with Coville

and Vinal jointly, as mentioned in said bill, but avers that the only contract made by defendant with said Coville and Vinal jointly in reference to said lots, was a verbal license or permit to put down a well on said lots—said license being the same in its terms and provisions as the one made with the said Vinal individually in reference to the 'Gore,' as hereinbefore stated.

"And further answering, the defendant denies that the said B. S. Compton was the agent of the defendant for the purpose of granting or contracting for the letting of leases; that any agreements made by said Compton for leases or contracts for the same have been and were subject to the approval of the board of directors or executive committee of said company as the said plaintiff well knows, and defendant avers that it never has in any manner, shape or form whatever ratified the alleged contract in said cross-bill stated, and could not have done so because the defendant, its officers and agents were certainly unaware until the filing of said Vinal's answer to the original bill in this cause that any such pretended claim on his part existed, and that all the oil received from said wells 1 and 2 was so received under and by virtue of a verbal permit as hereinbefore set forth and in no other manner whatever; that said Vinal had been a stockholder in said company for a considerable time previous thereto, had taken an active part in the business of the company and well knew at the time of the alleged contract in the bill mentioned that the company had adopted the policy of making no more leases upon its territory, but to buy up if possible all outstanding leases thereon. And defendant further answering avers that at no time did the said Vinal and Coville ever ask, request or demand of said company, its officers or agents, formal or written leases as claimed by him to have been contracted for, or any other written contracts whatever, or presented any such leases or contracts for execution by such officers or agents.

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

"And further answering, the defendant denies that the letters of B. S. Compton exhibited by said Vinal with his answer and made part of his cross-bill, are a sufficient memorandum to charge the defendant; that the said letters are the mere individual statements of said Compton, he not acting or pretending to act at the time as an officer of the company, and that taking said letters in their strongest light they constitute no foundation for the pretended claims of said Vinal or Vinal and Coville. And further answering, this defendant denies that the improvements made upon said territory referred to in said bill were made under the alleged contract therein stated, and avers that the said Vinal and Coville well knew all said alleged improvements were made under the parol contract or license in the answer hereinbefore set forth. And this defendant denies that the said Vinal is entitled to a specific execution of the pretended contract for a lease so set forth in said cross-bill. And having fully answered," &c.

The joint and several answer of the West Virginia Oil and Oil Land Company and J. C. Gilman to the supplemental cross-bill of John F. Vinal against them, and Corrydon Coville, filed in the circuit court of Ritchie county, is as follows:

"The said defendants reserving to themselves all and all manner of exceptions to said supplemental cross-bill for the many errors and uncertainties therein contained, for answer thereto say that it is not true, as in said supplemental cross-bill stated, that the original and cross-bill have been filed in this court, and the various proceedings had thereon set forth, and that the same are now pending. And these defendants hereby make the answer of the defendants, The West Virginia Oil and Oil Land Company, to said cross-bill a part of the answer to said supplemental cross-bill.

" And further answering, these defendants deny that the said Vinal, or Vinal and Coville jointly, have any

right whatever to the exclusive use and possession of the said lots Nos. 6 and 7, or either of them ; that the defendant Gilman in operating the well referred to in said supplemental cross-bill has been acting under lawful authority conferred upon him by his co-defendant, The West Virginia Oil and Oil Land Company, who still retain and ever have retained possession and *and* exercised acts of ownership over said territory, and claim the right, by its lessees, agents, or otherwise as it may deem most expedient, to operate and obtain oil from the same.

"And further answering, these defendants deny that the act of said Gilman in boring said well will diminish or destroy any estate thereon of the said Vinal, or that great and irreparable or any damage will be done to him thereby ; on the contrary thereof, these defendants aver that if the said company should be deprived by the false and fraudulent claims of said Vinal of using and enjoying its territory to which it has title in fee simple as shall be to its best advantage, and should the said Gilman be deprived of the use of said well, they will both sustain great and irreparable damage which cannot be adequately compensated in damages.

"And now, having fully answered, these defendants pray that the said supplemental cross-bill may be dismissed, and that said injunction may be dissolved, and that they may recover their costs, &c."

Exhibit No. 1, filed with the cross-bill does not appear in the record as before us, but the parties by their attorneys have filed an agreement in writing here marked A. to avoid that difficulty with others in these words:

"WEST VIRGINIA OIL AND OIL LAND COMPANY *appellant v.* JOHN F. VINAL, *appellee.* In the Supreme Court of Appeals of West Virginia, from the Circuit Court of Ritchie county. The undersigned counsel for the above named parties, appellant and appellee, respectively agree that in the printed record in the said cause there are di-

1879
Special Term.
──────
W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

vers omissions and misprints, which we have mutually agreed to correct, and have corrected our respective copies of said printed record where such misprints occur; and we also agree that the original paper referred to in the cross-examination of Vinal in answer to question 71, marked by the notary as exhibit No. 5, on page 244, printed record, shall be used on the hearing of said cause before the said Appellate Court. And we further agree that the copy of lease marked exhibit No. 7, beginning on page 327, shall be used instead of the like exhibit referred to in the cross-bill of John F. Vinal, made part of the said record, which exhibit does not appear to be copied into said record, disregarding the names, dates and property leased therein; the object being to prove the usual terms of the printed leases of said company.

C. C. COLE,
JNO. A. HUTCHINSON,
Counsel for Appellee.
WALTER S. SANDS,
Attorney for Appellant."

A number of depositions of witnesses were taken and filed by the said company and said Vinal in the court below, which appear in the record, but as the depositions are so voluminous as well as in some respects contradictory, I deem it advisable and proper not to undertake to state their contents here, but will, and must content myself under the circumstances, with hereafter referring to so much thereof only as I deem necessary and proper in arriving at what I deem a just and proper decision of the matters in issue.

It appears that on the 30th day of April, 1875, the causes were by consent of parties by their counsel submitted to said circuit court for a final decision to be rendered thereon at the next term thereof, and thereafter on the 20th day of October, 1875, the court made and entered in said causes the following decree:

"The W. Va. Oil & Oil Land Co. *vs.* John F. Vinal, } *In chancery,*

And

John F. Vinal *vs.* The W. Va. Oil & Oil Land Co. and J. C. Gilman, } *In chancery,*

1879
Special Term.

W. Va. O. & O
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

Upon a cross-bill and supplemental cross-bill.

"These causes came on this day to be further heard upon the papers heretofore read, the papers heretofore filed, and the depositions and proofs taken in the causes, and was argued by counsel. On mature consideration whereof, the court is of opinion that the plaintiff in the original bill is not entitled to the relief prayed for in its said bill. It is therefore adjudged, ordered and decreed that the injunction heretofore awarded the said plaintiff, in its original bill, on the 12th day of August, 1873, as prayed for in said original bill be and the same is hereby dissolved and the said bill dismissed. And the court is further of opinion, that the said John F. Vinal, the plaintiff in the said cross-bill, is entitled to a specific execution of the contract made by the said West Virginia Oil and Oil Land Company with him about the 1st day of May, 1872, whereby the said company agreed to lease to the said John F. Vinal all that parcel of land mentioned in the proceedings of this cause, and known as the 'Gore,' lying between lots six and seven, Whetwood run, and lots 'A and B,' now occupied by John A. Steel, in the county of Ritchie, West Virginia, for the term of fifteen years from that date, and upon which the said John F. Vinal was placed in possession by said company, for the purpose of boring for and producing oil, as in the proceedings of this cause mentioned. And it appearing to the court that, according to the terms of said contract, the said John F. Vinal was to keep a log and a correct account of the cost of the wells bored by him on said Gore, and that the said company had the right to pay the expense of making said wells at the ex-

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. &. O
L. Co.

piration of three months from the time that such well or wells should commence to produce oil, and upon such payment being made, to take up such well or wells; and it appearing that the said John F. Vinal has bored three wells upon the said Gore, and has produced oil therefrom, but has failed to file said log and account as required by said contract, it is further adjudged, ordered and decreed, that the said John F. Vinal do, within fifteen days from the date hereof, file in the office of said company, at Petroleum, in the said county of Ritchie, if he finds any office and agent of the company there, and that will receive the same; but if he finds no such agent there, or they refuse to receive the same, then with the clerk of this court, to be filed in the papers of this cause, a log of the borings of each of said wells, and a correct account of the cost of making said wells. And it is further adjudged, ordered and decreed, that the said company may, at the expiration of ninety days from the time the said log and account shall be 'so filed by the said Vinal as aforesaid, elect to take the said wells into its possession upon paying to the said John F. Vinal the amount of the said account of the cost of making said wells; and if the said company shall fail to make said election and to pay to said Vinal the said accounts at the expiration of said ninety days, then it is further adjudged, ordered and decreed, that the said company do and shall make and execute to the said John F. Vinal a deed of lease, containing the usual covenants and conditions of leases made by it to its lessees, as in the form thereof in the proceedings of this cause mentioned, for the term of fifteen years from the 1st of May, 1872, for the said parcel of land hereinbefore more fully described, known as the ' Gore,' at a rental royalty of one-third of all the oil produced; and if the said company should fail to execute and deliver to the said Vinal the deed of lease within ten days after the expiration of the said ninety days, then it is further adjudged, ordered and decreed, that C. C. Cole and John A. Hutchinson, either of whom may act alone or both together in exe-

cuting this decree, shall execute for and on behalf of said company said deed of lease, and deliver the same to the said Vinal. And it is further adjudged, ordered and decreed, that the said John F. Vinal do recover of said West Virginia Oil and Oil Land Company his costs by him about his defense in said original bill expended, and his costs about his suit in this behalf expended. And it is further adjudged, ordered and decreed, that B. F. Mitchell, the special receiver heretofore appointed in this cause do deliver to the said Vinal the full possession of the oil well heretofore placed in his charge, together with all the property thereto belonging, and that as soon as may be he file his report and account as such special receiver with the clerk of this court, to be filed in the papers of this cause, and the costs and charges of his care and management of said property. And it is further adjudged, ordered and decreed, that the injunction heretofore awarded in the said supplemental cross-bill in this cause, be and the same is hereby dissolved, and the said supplemental cross-bill is dismissed; and that the said West Virginia Oil and Oil Land Company, and J. C. Gilman recover of the said John F. Vinal their costs by them about their defense to the said supplemental cross-bill expended, but without prejudice to the right of the said Vinal to prosecute the suit as he may be advised in relation to the territory mentioned · in said supplemental cross-bill, as to lots six and seven; and on motion of John F. Vinal, he has leave to withdraw from the papers of these causes all exhibits filed by him with his bill, answers and depositions, by leaving attested copies thereof in the papers of this cause."

From and to the said decree of the 20th day of October, 1875, the said West Virginia Oil and Oil Land Company upon its petition and assignment of errors therein hath obtained an appeal and *supersedeas* from one of the judges of this court in vacation; and the said company in its said petition for said appeal and *supersedeas* hath assigned the following as errors in said decree:

*1879 Special Term.*

W. Va. O. & O. L. Co. v. Vinal and Vinal v. W. Va. O. & O. L. Co.

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

"*First.* The court erred in not sustaining *in toto* the demurrer of your petitioner to said cross and supplemental bills. (See decree of November 25, 1874.)

"*Second.* Upon the evidence in the cause, the weight of testimony was in favor of your petitioner and against the claims of said Vinal, and the original bill should have been sustained.

"*Third.* The contract which the court in its final decree directs to be specially enforced, is not the contract claimed by Vinal in his cross and supplemental bills, and is repudiated by all the parties to the suit both in their pleadings and evidence. It was not competent for this court to specifically enforce a contract made by itself and not made by the parties. Vinal could only recover upon a contract alleged and proved as alleged.

"*Fourth.* After the court in its final decree dismissed the original bill filed by your petitioner, it was error to give any relief upon the cross and supplemental bills.

"*Fifth.* In any aspect of the case, it was error in the court to appoint a commissioner or commissioners to make a lease to said Vinal of the territory in controversy, unless your petitioner within ninety days after the filing of a log and account of the expenses of said three wells upon the lease, should pay said account to said Vinal. Vinal by the decree, was made the sole *judge* of what his account should be, and no opportunity was given your petitioner to question its correctness; your petitioner was compelled to submit to any account Vinal might present, upon the penalty of having a lease made of the territory in controversy."

I have deemed it proper to give the foregoing statement of the pleadings, &c. in these causes because of the great importance of the matters involved and because it seems to me it was proper that I should do so with the view that a correct understanding may be formed of the principles involved and points which are hereinafter considered and decided. Having done this, I now proceed to the consideration of the errors assigned in the said

petition for an appeal and *supersedeas*, and will also con-
sider in connection therewith the points, made in the
printed brief of the counsel of said company filed in the
cause at the hearing thereof by this Court.

I will first consider the first assignment of error con-
tained in said petition, and then consider the other causes
assigned and points made in the order of their assign-
ment, considering some of them together.

*As to the first assignment of error contained in the said
company's petition considered in connection with what is
said in the brief of counsel for appellant in support
thereof :*

It is necessary to a right understanding of the ques-
tions arising under this assignment of error to consult
the standard authorities upon the practice and rules in
equity, to some extent, touching cross-bills. In Daniel's
Chancery Practice, 1st American edition, at pages 1742
and 1743, chapter 31, it is said : "A cross-bill is a bill
brought by a defendant against a plaintiff or other par-
ties in a former bill depending, touching the matter in
question in that bill. It is treated as a mere auxiliary
suit, or as a dependency upon the original suit, and can
be sustained only on matter growing out of the original
bill. A bill of this kind is usually brought either to
obtain a necessary discovery of facts in aid of the de-
fense to the original bill, or to obtain full relief to all
parties, in reference to the matters of the original bill.
A cross-bill is a mode of defense. The original bill
and the cross-bill are but one cause. It must be con-
fined to the subject matter of the original bill, and can-
not introduce new and distinct matters not embraced in
the original suit, and if it do so, no decree can be founded
on those matters."

Mr. Story in his work on Equity Pleading at §389
says : "And first of cross-bills. A cross-bill, *ex vi ter-
minorum*, implies a bill brought by a defendant in a suit
against the plaintiff in the same suit, or against other
defendants in the same suit, or against both touching the

*1879
Special Term.*

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

1879.
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

matters in question in the original bill. A bill of this kind is usually brought, either to obtain a necessary discovery of facts in aid of the defense to the original bill, or to obtained full relief to all parties, touching the matters of the original bill." See also upon same subject Mitf. Eq. Pl. by Jeremy side page 81, also Cooper's Eq. Pl. 85.

In the 2d volume of Barbour's Chancery Practice, at page 127, it is said "A cross-bill *ex vi terminorum*, implies a bill brought by some or one of the defendants in a suit against the complainant or against him and other defendants in that bill, or some of them, touching the matters in question in the original bill. Whenever it is brought against co-defendants in a suit, the complainant in such suit must be named a defendant together with them." The last named author in same volume at page 130, says : "A cross-bill should be confined to the matters stated in the original bill, and should not introduce new and distinct matter not embraced therein ; and if he does so, no decree can be founded upon those matters ; for as to them it is an original bill." The same author at page 131, also says : "A cross-bill, being generally considered as a defense to the original bill, or as a proceeding necessary to a complete determination of a matter already in litigation, the complainant is not, at least as against the complainant in the original bill, obliged to show any ground of equity to support the jurisdiction of the court. It is treated, in short as a mere auxiliary suit, or as a dependency upon the original suit. But where a cross-bill seeks not only discovery, but relief, care should be taken that the relief prayed by the cross-bill should be equitable relief ; for to this extent it may be considered as not purely a cross-bill, but in the nature of an original bill seeking further aid from the court ; and then the relief ought to be such as in point of jurisdiction it is competent for the court to give." The same author also says at page 133 of same volume : "A demurrer for want of equity will not lie to a cross-bill filed by a defendant in

a suit, against the complainant in the same suit, touching the same matters. For being drawn into court by the complainant in the original bill, he may avail himself of the assistance of the court without being put to a ground of equity to support its jurisdiction. When a cross-bill seeks relief which is of an equitable nature, if it does not contain all proper allegations which confer an equitable title to such relief upon the party, it will be open to demurrer."

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

Mr. Story in his Equity Plead. §631, says: "A cross-bill being, as has been already said, a matter of defense, is confined to the matters in litigation in the original suit. And therefore if it seeks to bring before the court other distinct matters and rights, it is no longer entitled to be deemed a cross-bill, but is an original suit. Without such a restriction, new matters might be introduced into litigation by cross suits without end. If therefore such a bill should be filed, affecting to be a mere cross-bill, but containing other distinct and independent matters, it would seem to be open to a demurrer for this cause. And at all events, no decree founded on such matters would be made upon the hearing of the original cause."

Mr. Robinson in the second volume of his Old Practice, at page 313, says: "The cross-bill is intended only in aid of the defense to the original suit, and the matter of it cannot be more extensive than the original defense. It may perhaps set up additional facts as constituting part of the same defense, relative to the same subject matter. But it ought not to contain new matter not set up as a defense in the original cause, unless it be matter which has arisen subsequently. Kent, Chancellor, in *Underhill* v. *Van Cortlandt, &c.*, 2 Johns. Ch. 355; *Brown, &c.* v. *Story*, 2 Paige 594; *Galatian, &c.* v. *Erwin, &c.*, 1 Hopkins' Ch. 58, 59."

In the case of *May, &c.* v. *Armstrong, &c.*, 3d vol. J. J. Marshall, Rep. 260, it is said: "The only object set out in the bill and the only prayer which it contains is confined

to the perpetuation of testimony." The judge who delivered the opinion of the court in this case says at page 261: "Whenever, then, to establish these defenses, or any one, a defendant may find it necessary to allege matter, or to call on the complainant to answer interrogatories, set forth in the answer in the nature of a cross-bill, it would be proper to tolerate a cross-bill. But when the cross-bill departs entirely from the object of the bill and introduces matter in no wise connected with them and which does not establish a good defense, then such cross-bill deserves no other answer than a demurrer. The cross-bill, in this case, sets up title, and would depart from the object and end of the bill, to-wit: the perpetuation of testimony, to be used in a suit which might be instituted at a future period and desires to enter into the controversy, who has the paramount title. This we think cannot be permitted. If it could be, there is no bill to perpetuate testimony which might not be converted into the trial of the right of the thing concerning which the testimony was to be perpetuated, by means of a cross-bill, and thus the jurisdiction of a court of chancery would be unwarrantably enlarged. A cross-bill must be confined to the subject matter of the bill. An entire departure from it is not admissible. * * Thus, if a bill be filed for a specific execution of a contract for land, the defendant cannot by way of cross-bill bring into litigation a fraud practiced on him by the complainant in swapping horses, or a debt due by the complainant unconnected with the contract concerning the land sought to be enforced. The cross-bill must relate exclusively to the subject matter of the bill and things connected therewith, and foreign matter cannot be introduced, unless under special circumstance."

In the case of *Underhill* v. *Van Cortlandt*, Judge Kent in 2d vol. Johns. Ch. at pages 354 and 355 says: "It is objected to the cross-bill, that it ought not to contain new mater, not set up as a defense in the original cause, unless it be new matter subsequently arising, for it is

intended only in aid of the defense in the original suit, and cannot be more extensive than the original defense. This is undoubtedly the general principle; but I am not clear that the cross-bill may not set up additional facts, as constituting part of the same defense, relative to the same subject matter."

1879
Special Term.
———
W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

The answer of Vinal to the original bill and the cross-bill of Vinal filed in the cause together certainly upon their face set up and make out a good [equitable defense, taking the allegations thereof to be true, against the complaints contained in the original bill. And further, taking the allegations of the cross-bill as true, it not only contains a complete equitable defense to said original bill, but it shows a verbal contract by the company through its authorized agent with Vinal for the lease of the "Gore" lot to said Vinal which a court of equity would, under the facts and circumstances stated and alleged in said cross-bill, decree to be specifically executed by the said company upon the ordinary bill filed for that purpose by Vinal; and also a verbal contract by the company with Vinal and Coville jointly for the lease of lots 6 and 7, which a court of equity under the facts and circumstances stated and alleged in said cross-bill, if true, would and ought to decree to be specifically executed upon the ordinary bill filed for that purpose by Vinal and Coville. But I apprehend an original bill filed by Vinal setting up both of said contracts as set out in the cross-bill and making the company and Coville defendants, and praying for the specific execution of both contracts, would be deemed and held to be multifarious and subject to demurrer because of the one contract being between the company and Vinal as to the "Gore" lot, and the other being between the company and Vinal and Coville jointly as to lots 6 and 7. The original bill does perhaps, on close inspection charge trespass and waste by Vinal on lots 6 and 7.

There is no preceivable objection therefore to Vinal stating and setting up said contract between him and

86

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

Coville and the company and part performance, &c. by them as an equitable defense to the alleged acts of trespass and waste on said lots six and seven, but it was, I think irregular for Vinal to pray in his cross-bill in this case a specific execution of the contract between him and Coville. and the company as to lots six and seven and make Coville a party defendant to the cross-bill, according to the rules and principles governing the practice in courts of equity, Coville was not a party to the original bill as plaintiff or defendant and the general rule seems to be from the authorities above cited, that a cross-bill can only be filed by one or more defendants to the original bill against the plaintiff therein or such defendant and the other defendants thereto; though this rule it would seem is not universally adhered to in practice, as for instance in the case of *Underhill* v. *Van Cortlandt*, 2d Johns. Ch. 339. In that case it seems the cross-bill charged fraud against the arbitrators and made them parties defendant thereto, although they do not seem to have been parties to the original bill or suit.

While I think it was irregular for Vinal in his cross-bill to pray the specific execution of the parol contract set up in the cross-bill between him and Coville and the company as to said lots six and seven, still I think it was legitimate and proper according to the principles and practice of courts of equity for Vinal in his cross-bill to pray for the specific execution of the contract set up by him as being made between him and the company as to said "Gore" lot. This I apprehend Vinal might have done in his answer to the original bill of the company if the contract, part performance thereof, and the making of valuable and expensive improvements, &c. had been alleged in his answer as seems to be done in his cross-bill under the 35th section of chapter 125 of the Code of this State of 1868; but Vinal did not pray for affirmative relief in his answer as to the specific execution of the contract alleged in the cross-bill as to the "Gore" lot, and I think failure to pray in his answer

for the execution of the said contract as to the "Gore" lot did not interfere with his right to file his cross-bill asking a specific execution of said contract as to said "Gore" lot. The cross-bill not only sets up the contract as to said "Gore" lot for a lease, &c. but prays for the specific execution thereof and to the extent it prays for affirmative relief it is a bill for relief in relation to said "Gore" lot as well as in other respects a bill in defense of the matters of grievance alleged and complained of in the original bill.

The cross-bill may therefore to this extent in this case be styled a cross-bill in defense of the original bill and for relief and in this respect it seems to me is good and sufficient. But as before stated it appears to me, that in so far as it prays for the specific execution of the contract therein alleged as to said lots six and seven and makes Coville a party defendant, it is irregular and the Court could not under the rules of practice in equity grant relief so prayed, in other words the court could make no decree of affirmative relief in favor of Vinal upon the alleged contract as to lots six and seven, but might properly consider the contract with the matters alleged in connection therewith, if proven as an equitable defense to the allegations of the original bill of acts of trespass and waste by said Vinal on said lots six and seven. The only irregularity then that I see in the cross-bill is simply the prayer for affirmative relief by Vinal as to the contract alleged, as to said lots six and seven, and the making of Coville a party thereto. It seems to me therefore that the court did not substantially err in sustaining the demurrer to so much of the cross-bill as makes said Coville; a party defendant thereto and prays for specific execution of said alleged contract as to said lots six and seven and in dismissing said cross-bill as to said Coville and in directing that all of said cross-bill, which asks specific execution of said alleged contract as to lots six and seven, be expunged from said crosss-bill—but I do not think for the reasons before stated that the demurrer should have been sustained

1879
Special Term.

W. Va. O. & O.
L. Co,
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

to the cross-bill, in so far as it alleges and sets up said alleged contract as to lots six and seven as a defense to acts of trespass or waste alleged against Vinal upon said lots six and seven, and so far as they, if true, constitute an equitable defense thereto; and I do not think from a close examination of the whole decree of the 25th of November, 1874, it was the purpose or intent of the court so to do, nor do I think there was error that should be considered prejudicial to the company in overruling the said demurrer as to the rest or residue of said cross-bill.

I now proceed to consider the action of the court in its said last named decree touching the demurrer of the company and Gilman to the supplemental cross-bill (as it is called in the proceedings) filed by Vinal. The said supplemental cross-bill is based upon the idea, that it was competent for the court to decree the specific execution of the contract alleged in the cross-bill as prayed for in the cross-bill, and that the court would do so on the final hearing of the original and cross-bill. And the object and purpose of the supplemental cross-bill was to enjoin and restrain the company and said Gilman as in the same is prayed in relation to boring for oil, &c., on said lots 6 and 7. It does not contemplate or pray for the specific execution of the alleged contract as to lots 6 and 7, except in the cross-bill case on the hearing thereof. And as we have seen it was not proper for the court to decree the specific execution of the alleged contract as to lots 6 and 7 in the cross-bill set up on the hearing of the original and cross-bill. For the reasons heretofore stated the injunction was improperly granted and the supplemental bill was improperly filed, and the court erred for this reason among others in not sustaining the demurrer of the company to the said supplemental bill of Vinal, and in not dissolving the injunction and dismissing the said supplemental cross-bill, without prejudice to the right or privilege of Vinal, or Vinal and Coville, to file an original bill against said company for the specific

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

execution of the said alleged contract as to said lots 6 and 7. It would have been quite different, if in lieu of said supplemental cross-bill Vinal, or Vinal and Coville, had set up said alleged contract as to said lots 6 and 7, part performance thereof, and making improvements, &c., with proper and apt averments in an original bill filed against the company for a specific execution of the said alleged contract.

I will now consider and decide upon the company's second and third assignments of error contained in their said petition in connection with what is said in the printed brief of appellant's counsel in support thereof. The appellant's counsel maintain in the brief and argument in support of said second and third assignments of error: 1. That upon the evidence in the cause, the weight of testimony was in favor of the plaintiff, and against the claims of said Vinal, and the original bill should have been sustained and the cross-bill dismissed. 2. That if the evidence proves any contract, it is not the contract set up in the cross-bill, but a different contract, one materially different and variant between the pleadings and the proof. 3. That B. S. Compton, the president of the company, had no power to contract for leases on behalf of the company. 4. That the alleged contract for a lease was void for want of a consideration to support it. 5. That the alleged contract was void under the statute of frauds, not being in writing. 6. No fraud or injustice would be practiced upon Vinal by the refusal of the court to enforce the alleged contract specifically. 7. The proof does not show what the usual term of the company's leases were, or that the alleged contract was made with reference to the printed form filed with the defendant's cross-bill, or that such printed form was the usual one used by the company.

Before proceeding to consider the facts, evidence or pleadings in this cause, I deem it proper to first ascertain and determine what is the law or rules in equity applicable, and which should be followed in this case.

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v
W. Va. O. & O.
L. Co.

Every bill filed in a court of equity for the specific execution of a contract in relation to lands, calls for the exercise of the extraordinary jurisdiction of equity, and is an application to the sound discretion of the court. It is not a case requiring the interposition of the court *ex debito justitiæ*, but rests in the discretion of the court, upon all the circumstances. *Pegg* v. *Corden*, 12 Leigh 76; Judge Carr in *Anthony* v. *Leftwitch*, 3 Rand. 215; *Willard* v. *Taylor*, 8 Wall. 565, 566; *McComas* v. *Easley*, 21 Gratt. 29, 30. This rule applies as well when the contract sought to be executed is by parol and there has been part execution as to contracts in writing. This, I think, is clearly established by the reasonings and conclusions of the judges in the cases last above cited. The discretion which may be exercised in this class of cases is not an arbitrary or capricious one, depending upon the mere pleasure of the court, but one which is controlled by the established doctrines and settled principles of equity. *Willard* v. *Taylor*, 8 Wall. 567; *Anthony* v. *Leftwitch, &c.*, 3 Rand. 238, opinions of Judges in the case; 6 Gratt. 78; *McComas* v. *Easley*, 21 Gratt. 30; 2 Story Jur. §§742, 751.

Generally where a contract respecting real property is in its nature and circumstances unobjectionable, it is as much a matter of course for courts of equity to decree a specific performance of it as it is for a court of law to give damages for the breach of it. 2 Story Eq. Jur. §751; 9 Ves. 608; 4 Pet. U. S. R. 311, 328. But the court may, under certain circumstances, refuse its aid and leave the parties to their legal remedies, or it may rescind the contract and place the parties *in statu quo*. *Bowles* v. *Woodson*, 6 Gratt. 78; *McComas* v. *Easley*, 21 Gratt. 31. And if the plaintiff alleges one contract and proves another, the court may compel specific execution of the contract as proved. *McComas* v. *Easley*, 21 Gratt. 31; *Baldenburg et al.* v. *Warden et al., supra*; 1 Daniel's Pr., Perkins's ed. 451 and note; *Fife* v. *Clayton*, 13 Ves. 546.

If the contract between the parties is different from the contract set up in the bill, and the *true* contract is

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W Va. O. & O.
L. Co.

proved by the defendant, the court ought generally not to dismiss the bill, but decree specific performance of the contract as proved, where it will produce neither hardship nor injustice to the parties, *McComas* v. *Easley,* 21 Gratt. 31 ; *Baldenburg et al.* v. *Warden et al.,* (*ubi supra.*) "It is the advantage of a court of equity that it can modify the demands of parties according to justice, and it may refuse its decree unless the party will take a decree upon condition of doing or relinquishing certain things to the other party." Justice Field in his opinion in *Willard* v. *Taylor,* 8 Wall. 567. Lord Redesdale in *Davis* v. *Hene,* 2 Sch. & Lef. 341, cited and referred to approvingly by Judge Christian in *McComas* v. *Easley,* 21 Gratt. 31.

When equity can do complete justice between the parties, it will never turn them out of court to pursue their remedy at law. *McComas* v. *Easley,* 21 Gratt. 31 ; 1 Munford 63 ; 5 Pet. U. S. R. 263.

But a court of equity having complete jurisdiction of the parties, and the subjects matter, should make such decree as will settle the rights of the parties, do complete justice between them and close the controversy forever. *McComas* v. *Easley,* 21 Gratt. 32. In the case of *Abbot* v. *Le'Homedieu,* 10 W. Va. 677, it was held by this Court, that "the exercise of the equity branch of jurisdiction respecting the rescission and specific performance of contracts is not a matter of right in either party, but is a matter of discretion in the courts, not indeed an arbitary or capricious discretion, dependant upon the mere pleasure of the judge, but of that sound and reasonable discretion, which governs itself as far as it may by general rules and principles, but at the same time, which withholds or grants relief according to the circumstances of each particular case, where these rules and principles will not furnish any exact measure of justice between the parties."

It is a general rule of equity that no one shall avail himself of a law made for his protection, so far as to in-

1879
Special Term

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

jure another; and especially not to enrich himself at his expense. Equity holds in such cases, that the party is guilty of a fraud, in availing himself of a legal right, to the prejudice of another; and will not permit him to profit by his fraud, at the expense of another. The statute of frauds was intended to protect parties against feigned or incomplete agreements. But when one party induces another, on the faith of a parol contract, to place him in a worse situation than he would have been, if no agreement had existed; and especially, if the former derives a benefit therefrom, at the expense of the latter, and avails himself of his legal advantage, he is guilty of a fraud and uses the statute for a purpose not intended; the injury of another for his own profit. The fraud does not consist in availing himself of the statute to protect himself; but in using it to appropriate to himself, what justly belongs to another. Opinion Judge Green in *Anthony* v. *Leftwich*, 3 Rand. 258, 259.

The same judge in the same case at pages 260, 261 & 262, of same report, says: "In such cases a court of equity may give relief upon the ground of fraud, and because there is no remedy, or a very inadequate one, at law. *O'Herliky* v. *Hedges*, 1 Sch. & Lef. 123. To determine on the proper measure of relief, it is necessary to ascertain the terms of the contract; and they being ascertained afford a just foundation for relief by a specific execution or compensation, as the one or the other may, upon all the circumstances of the case, be found to be most equitable. I can see no reason, founded upon the statute, which offers the one more than the other species of relief. A written contract does not bind the party at law to part with his title, but only to answer in damages for his refusal to execute it; yet a court of equity, in a proper case, will decree a specific execution. The exercise of this jurisdiction is not compulsory; but depends on a sound and not an arbitrary discretion, governed by settled principles.

"If a written contract should upon these principles be

found to be such as ought not to be executed, a court of <span style="float:right">1879<br>Special Term.</span>
equity will not give any other relief in general, because <span style="float:right">W. Va. O. & O.<br>L. Co.<br>v.<br>Vinal<br>and<br>Vinal<br>v.<br>W. Va. O. & O.<br>L. Co.</span>
the party has an adequate remedy at law.  But if a parol
contract, in part performed ought not to be specifically
executed, the court should in such a case decree a just
compensation ; because there is no remedy for the party at
law ; and relief against the fraud can be given in no other
way.   The next objection is, that the contract is uncer-
tain, and therefore cannot be executed.   Uncertainty in
a contract is a frequent objection to the specific execu-
tion of a contract, even when in writing.   But it ap-
plies only to cases, in which the terms of the agreement
being ascertained, either by writing or otherwise, it is
uncertain upon the ascertained terms of the agreement
what the parties stipulated for; as upon articles to
make a settlement, without specifying the amount or
property to be settled, or to give a fortune to a daughter
on her marriage.

"In such and like cases the contract is too uncertain
to enable the court to carry it into effect specifically.
But the objection does not apply in the case of a parol.
contract, the particulars of which it may be difficult to
collect from the evidence.   The uncertainty in such
case, is not as to the meaning of an ascertained agree-
ment, depending upon the construction of its terms, but
as to the matter of fact whether the terms were to this
or that effect, a difficulty to be solved, as are all other
questions of fact, by a careful comparison of all the
evidence ; and if that be so contradictory, that the court
cannot make up a satisfactory opinion as to the fact, it
should be referred to a commissioner to examine and
take any other evidence which may be produced, or to
a jury to determine upon the fact upon weighing the
whole evidence and deciding upon its credit.   *Attorney
General* v. *Day*, 1 Ves. 221 ; *Boardman* v. *Mostyn*, 6
Ves. 467 ; 1 Madd. Ch. 300.   In the case of parol con-
tracts for land, partly executed, it is the duty of the
court to exert all its means to ascertain the terms of the

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

contract whenever it appears conclusively, that a contract did exist, upon the faith of which one of the parties has expended his money, and this in order to prevent a total failure of justice."

The same judge in same case, at page 264, says : "If however the contract was uncertain, as that it could not for that cause be specifically executed, or if the variance between the contract fund, and that insisted on in the bill, presented an insurmountable obstacle to relief in that form, these circumstances would not preclude the court from giving relief by compensating the plaintiff for the actual loss which he has sustained, in consequence of acts done upon the faith of *some agreement*, and from which the other party has derived an equivalent benefit ; especially as the defendants do not admit, nor offer, nor are able to perform any agreement. In *Philips* v. *Thompson*, 1 Johns. Ch. 131, the plaintiff failed in proving the agreement set out in his bill, and in *Parkhurst* v. *Van Cortlandt*, 1 Johns. Ch. 273, the agreement was too imperfect for a specific execution. Yet in the first case, an issue *quantum damnificatus* was directed ; and in the other, it was referred to a master to ascertain the value of the permanent improvements made by the plaintiff, on the faith of the contract."

This court in the case of *Susan Baldenburg et al.* v. *Warden et al.*, (*ubi supra*), held that "where the contract proved varies from that set up in the bill and the contract proved is clear and certain in its terms, and is such as a court of equity might properly enforce, and the court below decrees a specific execution of the contract set out in the bill, the decree must be reversed, but the Appellate Court will not dismiss the bill, but will remand the cause to the court below to put the plaintiff to his election whether to have a specific performance of the contract as proved, or to have the same rescinded and the parties put *in statu quo*." (See the opinion delivered by Judge Johnson in the case and authorities there cited upon this question not hereinbefore referred to.)

It seems to me under the authorities before cited that where a party files a bill setting up a parol contract for the sale of real estate or the lease thereof for more than one year and prays a specific execution thereof upon the ground of part performance, &c., and the defendant in his answer denies the making of the contract as alleged, but admits that he did make a parol contract touching the real estate in question, or part thereof, materially different from that set up in the bill, and from the whole evidence in the cause the court was and is satisfied in its conscience that a contract is proved clear and certain in its terms, but in some material respects variant and different from that stated in the bill or answer, the court may in the interest of justice with the consent of the plaintiff in the exercise of a sound discretion decree the specific execution of the contract as proved by the evidence or the strong preponderance of the evidence, and especially so if the court sees and is satisfied from the whole proceedings in the cause that injustice will not thereby be done to the defendant by surprise, and provided the plaintiff consents in such case to the specific execution of the contract as the court ascertains it to be proved from the whole evidence and does such acts as the court may require or direct. And if the plaintiff in such case does not consent to the specific execution of the contract as so ascertained by the court, then the court may rescind the contract and proceed by proper decrees, &c. to put the parties *in statu quo*, according to the principles and rules of courts of equity. But no positive rule can be laid down by which the action of the court can be determined in all cases. The action of the court must to a great extent depend upon the circumstances and surroundings appearing in each case.

I do not pretend now to determine whether or not in the case of a parol contract for land partly executed, the party aggrieved by the failure of the other party to perform his part of the contract, has any remedy at law for indemnity for such failure, or whether in such case he

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

1879
Special Term.
W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.
could recover for money paid or for money expended, or work and labor done upon the premises upon faith of such contract, but I am clearly of opinion, that in most if not all such cases, the remedy at law (if any exist) of the purchaser, at least, would be inadequate and not full and complete, and in consequence of this fact, courts of equity have taken jurisdiction in such cases and meted out justice to the parties, according to equity and good conscience, under the established doctrines and settled principles of equity. Upon principle and authority, it seems to me, after much consideration, that in the case of parol contracts for land, partly executed, it is the duty of the court to exert proper means to ascertain the terms of the contract, whenever it clearly appears that a contract did exist, upon the faith of which one of the parties has expended his money, &c.; and this in order to prevent a failure of justice.

In the case at bar the evidence is very voluminous, and to some extent contradictory as to some points, and especially so as to the terms of the contract in question (the evidence occupying about three hundred pages of closely printed matter), and to attempt to state and analyze it in this opinion would extend the opinion to an unreasonable length, and would, to a great extent, be a work of supererogation. I must, under these circumstances, content myself with stating my convictions and conclusions as to whether the evidence proves a parol contract between Vinal and the said company of any kind, for the lot or parcel of land in the original and cross-bill in this cause mentioned and referred to as the "Gore" lot, or any part thereof; whether such contract was partly executed by Vinal, and also whether Vinal, upon the faith thereof, has expended his money or labor, &c. Upon a careful examination of the pleadings and evidence in the cause now appearing, both oral and written, I am of opinion, that the evidence clearly proves and establishes the fact that there was a parol contract made by and between the West Virginia Oil and Oil

1879
Special Term.

W. Va. O. & O
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

Land Company and said Vinal for a lease of part of said "Gore" lot of land, about the first of May, 1872, and that said contract was partly performed by said Vinal by entering upon said part of said "Gore" lot of land, upon the faith of the contract, and expending a large amount of his money in erecting derricks and sinking oil wells thereon ; and by paying the said company a large quantity of oil rent, from time to time pumped from said wells; which said company received from said Vinal as rent upon said contract, and appropriated the same to its own use. Of this I have no doubt.

The next enquiry is, what were the terms of said contract, does the evidence or a strong preponderance of the evidence prove a contract clear and certain in its terms ? I answer after a laborious examination of all the evidence that to my mind and in my judgment the strong preponderance of the evidence does prove a contract sufficiently clear and certain in its terms, and establishes the contract and its terms in substance to be as follows, to-wit: The said West Virginia Oil and Oil Land Company agreed to lease to the said John F. Vinal all that parcel of its land situate in the county of Ritchie, State of West Virginia, mentioned in the original and cross-bill filed in this cause, which is known as the "Gore," being between lots five, six and seven, Whetwood run, and lots A and B, occupied by one John A. Steel,except so much thereof as is held by Coville and Garber with their oil wells therein, and so much thereof as is held by Wm. H. Beach with his oil well therein, and also so much thereof and therein as is embraced within the lot mentioned and described as being seventy-five feet wide and two hundred feet in length, in a paper-writing dated the 15th day of April, 1872, and purporting to be signed by B. S. Compton, filed in the cause with the deposition of R. W. Gilchrist, and which is held by the said Gilchrist and Clark or one of them, or was so held before and at the time of the filing of the original bill in this cause, for the purpose of the said

Vinal exploring the same for oil and of his boring oil wells thereon and pumping or raising or causing oil to flow through or from said wells, the said Vinal to pay to said company as a rental therefor as often as requested by said company, its agent or agents during the time he pumps the oil well or wells, bored or sunk by him thereon, one-third part of all oil produced at such well or wells, the division of the oil so produced and the delivery of said oil rent to the said company to be had and made and received by the said company at said well or wells in tanks, barrels or casks to be furnished by the said company. The said Vinal to keep a correct log of said well or wells, and a correct account of the cost of said well or wells and the said cost of making said well or wells to be filed in the office of said company at Petroleum, Ritchie county, West Virginia, and that at any time the said company shall pay to said Vinal the cost of making the said well or wells so made by him the said Vinal shall 'deliver peaceable possession of said well or wells to the said company; provided however that said company shall not call for and ask possession of said well or wells in less than three months from the time such well or wells shall commence producing oil, and if said company shall not pay the cost of making the said well or wells to said Vinal and take the said well or wells so paid for into its possession as hereinbefore provided it may do, at its option, at any time after the expiration of three months from the time such well or wells commence to produce oil, then the term of said lease to said Vinal and any and all rights thereby granted to the said Vinal shall cease and determine at the end of fifteen years from the 1st day of May, 1872, and in no event shall the term of said lease to any part of the said "Gore" extend beyond fifteen years from the 1st day of May, 1872. And the other and further terms, conditions and agreements of said contract between the said company and said Vinal are those usually contained in leases made by the said company to its lessees for development of oil on its lands, and which

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

are contained and appear in the paper-writing filed in these causes and designated as exhibit number seven and purporting to be a lease, and dated the 7th day of December, 1877, and contained in these causes on pages 327, 328, 329, 330 and 331 of the printed record of said causes in this court, and purporting to be signed and sealed by B. S. Compton, president and R. W. Gilchrist, except and in so far as the same or any part thereof are not in conflict with the terms of said contract above specifically ascertained disregarding the names, dates and property leased in said lease of the 7th day of December, 1877, and the term of years and number of wells in said last named lease specified. And the deed of lease from the said company to said Vinal for said "Gore" of land was to contain the terms, conditions and agreements of said contract, and to be signed, sealed and acknowledged and delivered by said company and Vinal respectively.

The said contract as I have thus ascertained it to be, is in some respects materially different from what the court below declared it to be by its said decree of the 20th day of October, 1875. The contract between said company and said Vinal as ascertained and declared by the court below being materially variant from that stated in the bill and deduced from the evidence, the court should not have decreed the specific execution thereof, if it had ascertained the terms of the contract correctly, without the consent and election of said Vinal to take the specific execution of the contract as ascertained by the court; but if this was the only error in said decree, this court would not reverse it for that cause alone at the instance of said company (the appellant) because such error was not prejudicial to the company, unless this court could see from all the proceedings in the cause that injustice had been done the company by surprise on account of the variance between the contract deduced from the evidence and that set up in the bill.

For reasons before stated I do not think the weight of the testimony in the cause is in favor of the company

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

and against Vinal, upon the question as to whether there was a contract made between the company and Vinal for a lease of a part of said "Gore" lot of land. On the contrary, it seems to me that the weight and preponderance of the evidence in the cause proves the contract for a lease of a part of said "Gore" lot, as I have ascertained hereinbefore. As before stated, the fact that the evidence proved a contract materially variant from that set up in the bill, was not in and of itself sufficient to require the court below to dismiss the cross-bill.

B. S. Compton, it appears in the cause, was for a long time before and after the date of said contract president of said company and president of its executive committee, and from the evidence in the cause I am unable to conclude that he was not authorized to make said contract, as I have ascertained it—the fair inference, I think, from the facts appearing to my satisfaction from the strong preponderane of the evidence is, that he had such authority. But whether he had express authority or not, I do not deem material in this case, as I think it sufficiently appears from the evidence, that the company ratified the contract. It seems, from evidence in the cause, that the executive committee had power to direct leases to be made of lands of the company, as well as to contract for permits or license to sink or bore oil wells on the company's territory; and that said Compton, president of the executive committee, as well as president of the company, mostly made such contracts, and the contracts so made were recognized by the company.

" Indeed, as the verbal instructions of managers or directors to an officer of the company can rarely be proved by third persons, if his acts, as of borrowing money or purchasing goods for the corporation, are publicly performed at the office of the company, and are numerous, it may reasonably be intended that they conform to the instructions of the managers; and if from inattention they suffer him to continue in a line of conduct for a length of time which may reasonably led

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

others to infer authority, the corporation is as much bound by his act in favor of an innocent dealer as if he were expressly authorized." Angell & Ames on Corporations, §297, pp. 345, 346.

"If a corporation ratify the unauthorized act of its agent, the ratification is equal to a previous authority as in case of natural persons; no maxim being better settled in reason and law, than 'omnis ratihabitio retrohabetur, et mandato priori equiparatur, at all events, where it does not prejudice the rights of strangers." Same author, §304, p. 355.

I think the oil rent to be paid was a sufficient consideration for the contract under the circumstances, and that the fact that the oil in the earth undeveloped was the property of the plaintiff by reason of the company being the fee simple owner of the soil does not make the contract void for want of a sufficient consideration. The oil in the earth undeveloped is greatly enhanced in value when produced from the earth and thereby rendered useful for commercial purposes.

I do not think, for reasons before stated, that said contract under the circumstances and facts appearing in the cause is within the statute of frauds in a court of equity. It seems to me that great fraud and injustice might and probably would be done Vinal, if the court should refuse to execute the alleged contract specifically, if he elects at the proper time and place to have it performed, &c., as I have ascertained it, unless he has deprived himself of the right to have it executed by failing to file the log and costs of the three wells bored or sunk by him on said part of said "Gore" in the company's office at Petroleum, of which I will consider at another place. The evidence I think sufficiently establishes the term of the lease as I have already stated it and the terms of the contract.

*As to the appellant's fourth assignment of error,* I do not think this assignment of error is well taken, if the decree is otherwise right. The cross-bill not only states matters of defense, to the original bill, but it is a bill setting

88

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

up a parol contract with averments of part performance, &c., and prays a specific execution thereof, and to the extent it prays for affirmative relief touching a specific execution of said parol contract it may I think properly be called a cross-bill for relief in the nature of an original bill to that extent; and I think it is competent for the court to dismiss the original bill and afterwards treat and proceed with the cross-bill in such case as an original bill for relief. As a means of defense it may be said to have accomplished its object in that respect, when the original bill is dismissed by the court; but so far as relates to the matters set up therein, as to which it prays affirmative relief as above stated, its legitimate purpose and office has not been attained. I do not think therefore that the dismissal of the original bill in this case necessarily disposes of the defendant's cross-bill. In *Worrel* v. *Wade's Heirs,* 17 Iowa R., it was held that "the dismissal of the plaintiff's bill does not necessarily dispose of the defendant's cross-bill."

*As to the appellant's fifth assignment of error contained in his petition :*

It seems to me that this assignment of error is principally well taken. I do not understand from the contract as proved and ascertained, that the company is or can be limited as to the time it may pay the cost of making any oil well or wells, and take them up, except that it has no right in any event to take up any well or wells in less than three months from the time such well or wells commence producing oil. During such three months the said Vinal is entitled, under said contract, to the possession, control and use of such well or wells, yielding and paying to the company as the rent one-third of the oil produced, as prescribed in the contract ; but at any time after the expiration of said three months the company, under the contract, has the right to pay to Vinal the cost of making such well or wells, and take the said well or wells up from said Vinal. And I apprehend that under the contract as ascertained by me, and

in effect as ascertained by the court below, the company 1879 Special Term.

W. Va. O. & O. L. Co. v. Vinal and Vinal v. W. Va. O. & O. L. Co. is not absolutely bound by the expense account of making *any* well or wells returned by Vinal, unless the same is substantially correct. The contract contemplates, that the company, after the expiration of said three months, has the right to take up said well or wells on paying to Vinal the actual costs of making the same.

There appears in the record as before us, immediately following the said decree of the 20th day of October, 1875, what purports to be a log and an account of the costs of making each of said three wells, which log and expense acccount each purport to be certified as correct by said Vinal; but it nowhere appears when it was filed with the papers of the cause, or by whom, or that it was ever before the court before said last named decree, or at any other time. This log and expense account it is manifest, was filed or placed among the papers of the cause after said last named decree was rendered, and can not be considered by us in reviewing the said decree. It is argued before us, that Vinal is not entitled in any event to have a specific execution of said contract as proved, because he did not file in the company's office at Petroleum, a log and an expense account of each of said wells at the time the wells commenced producing oil, or at any time afterwards. It appears, however, that the two first wells bored and sunk by Vinal on said "Gore" were completed and commenced producing oil some six or seven months prior to the filing of said original bill, and that the company received rent oil regularly from said Vinal up to the time said bill was filed, and even afterwards, notwithstanding it must have been known by the company that said logs and expense accounts had not been filed by Vinal, and it does not appear to my satisfaction, from the evidence, that the company ever did in fact demand from said Vinal the filing of said logs and expense accounts, prior to the filing of his cross-bill. It will be observed that the contract, as ascertained, does not expressly fix any time within which the said logs and

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

expense accounts should be filed by Vinal, after the well or wells commenced producing oil. In the absence of such stipulation perhaps it might be inferred that it should be done within a reasonable time and before the expiration of the three months after each well commenced to produce oil. But it does not appear from the evidence in this cause, that the company by or through any of its agents or officers, ever intimated or communicated to said Vinal that it wished or desired to pay the cost of said two wells and take them up, and so of the third and last well, out of which this controversy seems to have arisen.

The third well the company denied the right of Vinal to sink or bore under any contract, but treats him in its original bill as a trespasser; and one might readily suppose from reading said bill that Vinal never had any right or privilege to occupy any part of said "Gore" for the purpose of sinking any oil wells thereon. The original bill by its silence as to the said two wells (sunk by Vinal for months prior thereto, and then in possession and use of Vinal, and the company then and for months prior to the filing of the original bill receiving rent oil from Vinal therefor) would seem to ignore any right of of said Vinal to bore said two wells.

According to the terms of the contract as proved and herein stated I do not think that the filing of the log and expense account of each well bored, within any fixed time or even a reasonable time after each well commenced to produce oil was of the essence of the said contract, and that the failure of Vinal to file said logs and expense accounts ought not under the circumstances appearing in this case to be held a ground for refusing a decree of performance of the contract. If it satisfactorily and clearly appeared that the company had wished in any event to take up the wells and had solicited Vinal to return said logs and expense accounts to the company's office at Petroleum, and Vinal had refused to do so, then perhaps it would be proper for the court to decline a specific exe-

1879
Special Term.

W. Va. O. & O.
L Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

cution of the contract; but it is unnecessary to determine this question in this case as it does not appear satisfactorily to me that the company ever demanded or requested Vinal to file said logs and expense accounts or either of them. It no where sufficiently appears that the company at any time before the filing of its original bill or even said cross-bill objected to Vinal boring said two first wells or to his pumping oil from them and appropriating two-thirds of the amount thereof to his own use as his property and rendering the other third to the company, so far as appears by the record, at a tank at or near the wells on the "Gore."

It also appears that Vinal, after the third and last well sunk by him commenced producing oil, requested the company through its proper officers to receive the oil rental of said third well, but the company declined so to do, not because Vinal had not filed in the company's office at Petroleum the logs and expense accounts of making the said first two wells, but because so far as appears, the company claimed that Vinal had no right under any contract to sink said third well and in doing so he was a trespasser, the company at the same time receiving oil from Vinal for rent for the two first wells. It is testified to by some of the witnesses however, that the company did receive oil from said third well.

Mr. Story in the 2d vol. of his Eq. Jur. §771, says, "for although courts of equity will not encourage laches; yet if there has not been a strict legal compliance with the terms of the contract, and the non-compliance does not go to the essence of the contract, relief will be granted." Again at §776 he says: "one of the most frequent occasions on which courts of equity are asked to decree a specific performance of contracts, is where the terms for the performance and completion of the contract have not in point of time been strictly complied with. Time is not generally deemed in equity to be of the essence of the contract, unless the parties have expressly so treated it, or it necessarily follows from the nature and

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

circumstances of the contract. It is true that courts of equity have regard to time so far as it respects the good faith, and diligence of the parties; * * even when time is of the essence of the contract, it may be waived by proceeding in the purchase after the time has elapsed; and if time was not originally made by the parties the essence of the contract, yet it may become so by notice, if the other party is afterwards guilty of improper delays in completing the purchase." See also upon this subject *Abbott* v. *L' Homedieu,* 10 W. Va. R. 677, at pages 678, 711, 712, 713, and cases there cited.

Upon the whole, it seems to me that in this case there should be a specific execution of said contract substantially as I have ascertained it, if said Vinal elects to have it executed in the court below, when the case is remanded there for further proceedings, upon his filing in the court with the papers of the cause logs and accounts of the expenses of making each of said three wells, verified by the affidavit of said Vinal to be correct to the best of his knowledge and belief; but with this further qualification and condition, as it was a part of said contract manifestly that the deed of lease should contain substantially the terms, conditions and agreements of the said company and the said Vinal, respectively, to and with each other, if said Vinal should elect to have said contract executed on the part of the company, and file said logs and accounts verified as aforesaid, the court should not direct it to be executed on the part of said company by the execution of the deed of lease, without requiring in the decree the said Vinal also to join in the lease by signing, sealing and acknowledging the same properly for record.

But it should be substantially stated and provided in said deed of lease, and as a part *and parcel* thereof, that the said Vinal shall not be responsible or liable in law or equity, upon any covenant or agreement, express or implied, therein contained, for any part of the rent, or oil rent, or oil in said deed of lease mentioned or referred

to, which he has before the date of said lease paid or delivered to the said company, or which said company has received, or for any oil rent or oil which went into the possession and custody of the special receiver, as such, heretofore appointed by the circuit court of Ritchie county in these causes, or either of them, or for him, the said Vinal, having failed to file the said log or logs, or either or any of them, of the three said oil wells or either of them, heretofore bored or sunk on said "Gore" lot of land, or for the said Vinal having failed to file the said expense account or accounts of boring or sinking said three oil wells, or either of them, upon said "Gore" lot of land.   But said deed of lease should require said Vinal to pay said company any oil rent which may be due it at the date of said lease. And the decree should provide that the deed of lease which the court may direct to be executed by or on behalf of the company should not take effect or be operative until also executed by said Xinal.

And the court should give said Vinal such time as it may deem reasonable after the deed of lease is executed by the company or for and on its behalf to sign, seal and acknowledge the said lease as aforesaid. And if said Vinal shall fail to execute the said deed of lease as aforesaid for such length of time as the court may deem unreasonable, then the court should rescind said contract and proceed to place the said Vinal and said company *in statu quo* by decreeing said Vinal proper compensation &c. according to the rules and principles of equity in such case.

I think the deed of lease after being executed, and acknowledged should be passed upon by the court, as the court should be satisfied that the deed of lease is in proper form and properly states the terms, conditions, agreement, &c., of the contract ; and the deed of lease when properly executed, acknowledged and approved by the court should be directed to be recorded in the clerk's office of the county court of Ritchie county.

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

But the court should give to the company on the filing of said logs and expense accounts as aforesaid a reasonable time to file a petition in the court to surcharge and falsify any item or items of said accounts of expenses or either of them, and if the said company elects to file such petition, process therein should be issued against said Vinal to answer said petition, and on considering said petition and the matters thereof and testimony the said expense accounts so sought to be falsified should each be considered as being *prima facie* correct, and if the court should consider that said expense accounts or either of them are materially incorrect in amount in the aggregate, it should ascertain and determine the actual expense of making each of said three wells and fix it by decree.

If the said company shall elect within such reasonable time aforesaid, to be fixed by the court, to file its petition to surcharge and falsify said expense accounts or either of them, and does file the same, such expense accounts of either of said three wells as is not sought to be surcharged or falsified in said petition, should be approved and declared by the court to be correct by decree. And the court should also declare and decree in the cause, if said Vinal elects to have said contract of lease extended and complies with the requirements of the court, that the said company may at its option at any time before the expiration of fifteen years from the 1st day of May, 1872, pay to the said Vinal the actual cost of making any or all of the three oil wells now on said "Gore" and that on the payment of the actual cost of making any or all of said three wells to said Vinal, the said company shall have the right to demand and receive from said Vinal the possession of any or all of said oil wells, for which it may so pay, for its exclusive use, and that the said company shall have the right to pay said Vinal the actual cost of any well or wells he may hereafter bore or sink on said "Gore" after the expiration of three months from the time such well or wells commences to produce oil at any time before the expiration of fifteen years from the 1st day of May, 1872,

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

and that upon such payment said company shall have the right to take exclusive possession of any such well or wells, for which it shall pay, at the time of payment for its own exclusive use. But the execution of said contract by the court decreeing the making of the lease by the said company to said Vinal or the appointment of a special commissioner to execute said lease for said company substantially according to the terms of said contract as herein ascertained, &c., need not under the circumstances appearing be delayed to await the result of litigation as to whether said expense accounts, or either of them, are correct, and the court may proceed at once to decree the execution of said lease, if Vinal elects to have the contract executed and complies with the requirements and directions of the court.

If the said Vinal should not elect to have said contract executed, then the court should rescind and it proceed by proper decrees and proceedings in the cause to place the company and said Vinal *in statu quo* giving said Vinal proper compensation, &c., according to the rules and practice of equity in such case.

If said Vinal elects to have said contract executed and complies with the requirements and directions of the court, then the court, after decreeing the execution of the same and after said deed of lease is properly executed and approved by the court should dissolve the injunction granted the said company upon its prayer in the said original bill filed by it, and direct the special receiver, B. F. Mitchell, appointed in the cause, to deliver to the said Vinal the full possession of the oil well heretofore placed in his charge by the court, together with all the property thereto belonging or appertaining, and also direct and require said special receiver to make report to the court of his proceedings as such special receiver together with an account showing his receipts of every kind and the disposition made thereof, and what balance remains in his hands and the cost and charges of his care and management of said property and any other matter which may be proper or

1879
Special Term.

W. Va. O. & O.
L. Co.
v.
Vinal
and
Vinal
v.
W. Va. O. & O.
L. Co.

necessary to a full exhibition of his accounts as such receiver. And on the coming in of said report, and on consideration thereof together with any proper exceptions, which may be filed thereto the court should make such orders and decrees in relation thereto, as may be proper, and ultimately direct what disposition said receiver shall make of any balance of money or property after payment of his proper costs and charges, &c.

I am satisfied, from the pleadings and all the proceedings of the whole case, that no injustice will be done the said company by surprise or otherwise by the court below proceeding to specifically execute said contract, with the consent of Vinal, upon his filing the log and expense accounts of each of said wells, verified as aforesaid, and requiring said Vinal to execute said lease as aforesaid, and allowing the company, if it desires so to do, to contest the correctness of said expense accounts, as before indicated.

For the foregoing reasons there is error in the said decree of the said circuit court of the county of Ritchie; rendered in these causes on the 20th day of October, 1875. And the said decree, and also the decree of said court rendered on the 25th day of November, 1874, in so far as it overruled the demurrer filed in the cause by the appellant and J. C. Gilman to the supplemental cross-bill of John F. Vinal, must be reversed ; and the appellee, John F. Vinal, must pay to the appellant, the West Virginia Oil and Oil Land Company, its costs expended in this Court about the prosecution of its appeal and *supersedeas* in this Court. And this Court proceeding to render such decree as the said circuit court should have rendered upon the said demurrer of the appellant and the said J. C. Gilman to said supplemental cross-bill, it is adjudged, ordered and decreed, that the said demurrer to the said supplemental cross-bill be sustained, and that said supplemental cross-bill be dismissed, and that the injunction thereon granted be dissolved, and that the said John F. Vinal do pay to the said West

Virginia Oil and Oil Land Company and J. C. Gilman their costs about their defense of said supplemental cross-bill, in the said circuit court of Ritchie county expended. But this dismissal of said supplemental cross-bill and the dissolution of the injunction thereon granted, shall not prejudice the right or privilege of said Vinal, or said Vinal and C. Coville, or either of them, to file an original bill against the said West Virginia Oil and Oil Land Company for the specific execution of the contract set up and mentioned in the cross-bill filed in this cause, or said supplemental cross-bill, as to the lots of land numbers six and seven in said cross-bill mentioned, or to further prosecute such original bill, if one is now pending for that purpose. And it is further adjudged, ordered and decreed that these causes, that is to say, the original and cross-bill causes be remanded to the said circuit court of the county of Ritchie, with directions and instructions to further proceed in said two last named causes, according to the principles settled therein in this opinion, and further to proceed therein according to the principles and rules governing courts of equity.

JUDGES MOORE AND GREEN CONCURRED.

DECREE REVERSED. CAUSE REMANDED.